[L.A. No. 30178. In Bank. Jan. 29, 1975.]

THE PEOPLE et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
1973 GRAND JURY FOR SANTA BARBARA COUNTY et al.,
Real Parties in Interest.

## COUNSEL

David D. Minier, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Arlo E. Smith and Doris H. Maier, Assistant Attorneys General, Derald E. Granberg and April P. Kestell, Deputy Attorneys General, and Stanford D. Herlick, County Counsel (San Bernardino), as Amici Curiae on behalf of Petitioners.

George P. Kading, County Counsel, Robert D. Curiel, Chief Assistant County Counsel, and Marvin Levine, Deputy County Counsel, for Respondent.

John H. Larson, County Counsel (Los Angeles), Robert C. Lynch, Deputy County Counsel, and Edward L. Lascher as Amici Curiae on behalf of Respondent.

No appearance for Real Parties in Interest.

## OPINION

**TOBRINER, J.**—In California the grand jury, in addition to determining whether or not to indict individuals suspected of crime, exercises an important "watchdog" function over the operation of many facets of local government. To fulfill this oversight role, the grand jury has been granted extensive statutory authority to prepare "reports" disclosing its findings and recommendations for improvement in the administration of local government. At the same time the decisions, without contradiction, hold that the grand jury is a component part of the superior court. The question presented in this case is whether that superior court must accept and file *any* report which the grand jury prepares or may refuse to accept and file a report which exceeds the grand jury's legal authority.

In an original proceeding instituted by the District Attorney of Santa Barbara County, the Court of Appeal concluded that a superior court must accept any report submitted by a grand jury; in accordance with this conclusion, the appellate court determined that a writ of prohibition should issue restraining the respondent superior court from reviewing any grand jury report submitted to it in the future.

For the reasons discussed hereafter, we have concluded that in this state superior courts are empowered to exercise a limited review of a proposed grand jury report to ensure that the report does not exceed the grand jury's lawful authority. As we shall explain, although California statutes establish a broad realm in which the grand jury is authorized to investigate and report, the grand jury's domain is not unlimited; if a proposed grand jury report exceeds established legal limits, the superior court which convenes the grand jury and which is responsible for its supervision may properly refuse to file the report. Although no California statute explicitly authorizes such judicial action, this limited review is implicit in the statutory scheme confining the grand jury's investigatory authority to specifically enumerated subjects and is confirmed by the numerous common law decisions throughout the

United States which uniformly recognize the propriety of a restricted court review of grand jury reports.

In so holding, however, we emphasize that the scope of the superior court's reviewing role is strictly confined to ensuring that reports do not extend beyond the legal boundaries of the grand jury's broad reportorial power. The superior court possesses no authority to edit or seal a report simply because the court disagrees with the report's conclusion, or believes that its recommendations were hastily reached or were not "justified." The court's sole function in this realm lies in its power to prevent the official filing of an illegal report: for example, a report on matters which the grand jury has not itself investigated or a report concerning activities of a distant municipality not lying within the grand jury's province. ▐ Because the requested relief would preclude even this most restricted superior court review, we deny the writ.

The facts which gave rise to the instant proceeding are not in dispute. On October 3, 1972, the Santa Barbara District Attorney presented evidence before the 1972 Santa Barbara Grand Jury concerning the county pathologist, Dr. McAlpine. Witnesses before the grand jury included a deputy sheriff assigned to the coroner's detail, a representative of a mortuary, the sheriff, the county hospital administrator and Dr. McAlpine. After hearing the testimony the grand jury submitted to the superior court an "Interim Report" detailing a series of "irregularities" for which Dr. McAlpine was allegedly responsible and setting forth certain recommendations for procedural changes in the handling of financial and other matters in the county hospital's pathology department.

On October 24, 1972, Judge Dodson, the presiding judge of the Santa Barbara Superior Court, met with the grand jury and explained at some length why he believed that the interim report did not satisfy applicable legal standards. Judge Dodson stressed that a grand jury report which directs serious accusations at a specified individual " 'castigates him, impugns his integrity . . . and . . . subjects him to the odium of condemnation by an arm of the judicial branch of the government, without giving him the slightest chance to defend himself. . . .' " The presiding judge also warned the jurors that statements in the report could subject each of them to libel actions. (See Pen. Code, § 930.) Finally, the judge informed the jurors that because of his conclusions as to the impropriety of the report, he had both a right and a duty to see that the report was not filed or made public. Judge Dodson then ordered the

interim report sealed and directed the jury to turn to preparation of its final report with assistance, if necessary, of the county counsel.

On January 9, 1973, the grand jury submitted a final report to the superior court which contained a "special report" on the pathology department of the county hospital. This special report reiterated many of the recommendations contained in the earlier interim report but omitted the specific allegations of misconduct by Dr. McAlpine which the earlier report detailed. The superior court accepted and filed the final report.

Thereafter, in advising the 1973 grand jury of its powers and duties (see Pen. Code, § 914), Judge Dodson instructed: "In accordance with established policy of many courts, I instruct you to deliver to me all grand jury reports prior to filing them, and I instruct the clerk of this court not to accept for filing any grand jury report until I have accepted it for filing."

The District Attorney of Santa Barbara County then filed the instant petition for writ of mandate and prohibition in the Court of Appeal, seeking (1) to restrain the superior court from requiring the 1973 grand jury to submit all reports to the presiding judge for his approval prior to filing, and (2) to compel the superior court to set aside its order sealing the interim report of the 1972 grand jury.[1]

Relying upon the absence of any specific statutory provision authorizing a court's review of grand jury reports, the Court of Appeal granted petitioner's initial request, and determined that a writ should issue "prohibiting the respondent Superior Court of Santa Barbara County from . . . altering, amending or in any way interfering with the filing of future reports of the Grand Jury. . . ." The Court of Appeal declined, however, to order the superior court to unseal the interim report, reasoning that the filing of the grand jury's final report—containing many of the same items covered by the interim report—had rendered the district attorney's second request moot.[2] Respondent court thereafter

---

[1]Upon stipulation of the parties, the Court of Appeal considered the petition on the merits without issuing an alternative writ or any other interim relief.

[2]The Court of Appeal reasoned in this regard: "Both the report and the grand jury have been overtaken by the passage of time. The regular impanelment of the 1973 grand jury ended the life of the old jury [citation] and the content of the interim report appears to have been substantially covered in the final report of the grand jury. It is now a practical impossibility at this date to determine if the 1972 jury intended the final report to subsume its interim report. In any event, since a comparison of interim and final reports indicates substantially similar content, the problem of the interim report appears to be moot." We concur in this assessment of the issue, and consequently we confine our

sought review of the Court of Appeal's determination that superior courts have no authority under any circumstances to review a proposed grand jury report prior to filing. Because of the novelty and statewide significance of this issue,[3] we granted the petition for hearing.

In California, unlike some other American jurisdictions,[4] the grand jury's role as a vigilant "watchdog" over the operations of a variety of local governmental activities has a long and well respected heritage. As long ago as 1880, the Legislature assigned to the grand jury the responsibility of making "a careful and complete examination of the books, records and accounts of all officers of the county . . . *and to report thereon.*" (Italics added.) (Pen. Code Ann. 1880, ch. 109, p. 43; see Pen. Code, § 925.)[5] Over the ensuing years, the Legislature has continually expanded the boundaries of the grand jury's investigatory and reportorial domain, authorizing the grand jury to make inquiry into and report on the "needs of all county officers" including the desirability of abolishing or creating county offices and the adequacy of the existing "method or system of performing" county duties (Stats. 1911, ch. 200, § 1, p. 373; Pen. Code, § 928), the propriety of the salaries paid to various public officials (Stats. 1943, ch. 93, § 1, p. 798; Pen. Code, § 927), the operation of special-purpose assessing or taxing districts located wholly or in part within the county (Stats. 1961, ch. 1461, § 2, p. 3313; Stats. 1969, ch. 931, § 1, p. 1870; Pen. Code, § 933.5), and, most recently, the state of the fiscal affairs of any incorporated city within the county (Stats. 1973, ch. 1036, § 3, p. 2055; Pen. Code, § 925a.)

Past cases have recognized the valuable and unique role a grand jury

discussion to the propriety of the Court of Appeal's initial order restraining the superior court from conducting any review of a proposed grand jury report prior to accepting it for filing.

[3]Amicus curiae briefs filed on behalf of the superior courts of several of California's largest counties (Los Angeles, San Bernardino) point out that the charge to the grand jury given by the Santa Barbara Superior Court, and invalidated by the decision below, is essentially the same charge regularly given to grand jurors in their respective counties.

[4]Federal courts have generally held that federal grand juries lack authority to issue "reports" on public affairs. (See, e.g., *Application of United Electrical, Radio v. M. Workers* (S.D.N.Y. 1953) 111 F.Supp. 858; *United States v. Cox* (5th Cir. 1965) 342 F.2d 167, 186 fn. 2 (Wisdom, J., concurring).) The New York Court of Appeals reached a similar conclusion in the absence of explicit statutory authority for grand jury reports (see, e.g., *Wood v. Hughes* (1961) 9 N.Y.2d 144 [212 N.Y.S.2d 33, 173 N.E.2d 21]); thereafter New York enacted specific legislation authorizing such reports. (See *In re Second Report of Nov., 1968 Grand Jury* (1970) 26 N.Y.2d 200 [309 N.Y.S.2d 297, 257 N.E.2d 859] (upholding constitutionality of statute).)

[5]Indeed, the origin of the California grand jury's reporting authority can probably be traced to an 1851 statute, which directed the grand jury to investigate inter alia "the condition and management of public prisons." (Stats 1851, ch. 29, § 214, p. 235; see Pen. Code, § 919.)

fulfills in carrying out its authorized investigations and reporting on its findings and recommendations. As the court in *Monroe* v. *Garrett* (1971) 17 Cal.App.3d 280, 284 [94 Cal.Rptr. 531] recently observed: "In our system of government, a grand jury is the only agency free from possible political or official bias that has an opportunity to see . . . the operation of government . . . on any broad basis. It performs a valuable public purpose in presenting its conclusions drawn from that overview. The public may, of course, ultimately conclude that the jury's fears were exaggerated or that its proposed solutions are unwise. But the debate which reports . . . provoke [can] lead only to a better understanding of public governmental problems." (See generally Olson, Ombudsman on the West Coast: An Analysis and Evaluation of the Watchdog Function of the California Grand Jury (1968) Cont. Ed. Ser., Mich. St. U., Institute for Community Devel. Series.)

Although the propriety of grand jury reports on local governmental affairs finds support in a long history, a grand jury's investigatory and reporting power has been bounded. Penal Code section 939.9 constitutes perhaps the most obvious limitation on the grand jury's reportorial authority, providing explicitly that "[a] grand jury shall make no report, declaration or recommendation on any matter except on the basis of its own investigation of the matter. . . ."[6]

The numerous statutory provisions noted above, which grant the grand jury authority to investigate and report on numerous facets of local government, also limit the grand jury's investigation and reporting authority to the specifically enumerated fields. █ As the Court of Appeal noted in *Board of Trustees* v. *Leach* (1968) 258 Cal.App.2d 281, 285 [65 Cal.Rptr. 588]: "Although [the grand jury's] powers are broad, they are carefully defined and limited by statute, and the grand jury has no inherent investigatory powers beyond those granted by the Legislature."[7] (Cf. *Allen* v. *Payne* (1934) 1 Cal.2d 607 [36 P.2d 614].) Thus, although a grand jury has extensive authority to investigate and recommend improvements within its own county, it is not authorized to

---

[6]Section 939.9 provides in full: "A grand jury shall make no report, declaration, or recommendation on any matter except on the basis of its own investigation of the matter made by such grand jury. A grand jury shall not adopt as its own the recommendation of another grand jury unless the grand jury adopting such recommendation does so after its own investigation of the matter as to which the recommendation is made, as required by this section."

[7]In *Leach,* the Court of Appeal concluded that the applicable statute (Pen. Code, § 933.5) conferred no authority upon the grand jury to investigate the personnel records of the defendant school district; the court accordingly granted a writ of mandate quashing a subpoena of such records.

roam at will throughout the state or country reporting on what it might view as shortcomings in distant locales.

Despite these recognized legal limitations on the grand jury's reporting authority, petitioner contends that even if a proposed grand jury report contravenes such legal bounds, a superior court must accept the report for filing; petitioner maintains that because no statute explicitly gives the superior court authority to enforce the legal restrictions on the grand jury's reporting power by refusing to accept an unauthorized report, the superior court lacks any such authority. In this regard plaintiff urges that the grand jury is completely independent of the superior court and thus that, in the absence of statute, the court lacks any legitimate basis on which to "censor" even a legally unauthorized grand jury report.

Petitioner's argument misconceives the nature of the grand jury institution in California and its relationship to the courts. Although petitioner suggests that the grand jury is a completely freewheeling entity, separate and distinct from the judicial branch of government, the governing provisions uniformly refute such a characterization. Penal Code section 888 defines a grand jury as "a body of the required number of persons returned from the citizens of the county *before a court of competent jurisdiction* . . . ." (Italics added.) ■ As this section indicates, and as the California precedents have long recognized, the grand jury is a "judicial body" (*Ex parte Sternes* (1889) 82 Cal. 245, 247 [23 P. 38]), "an instrumentality of the courts of this state . . . ." (*In re Shuler* (1930) 210 Cal. 377, 405 [292 P. 481]; see, e.g., *Turpen* v. *Booth* (1880) 56 Cal. 65, 69; *McFarland* v. *Superior Court* (1948) 88 Cal.App.2d 153, 160 [198 P.2d 318]; *Irwin* v. *Murphy* (1933) 129 Cal.App. 713, 716 [19 P.2d 292].)

As this court stated emphatically almost 90 years ago: "There is no doubt that a grand jury is part of the court by which it is convened, and that it is under the control of the court . . . ." (*In re Gannon* (1886) 69 Cal. 541, 543 [11 P. 240]. See generally Kennedy & Briggs, *Historical and Legal Aspects of the California Grand Jury System* (1955) 43 Cal.L.Rev. 251, 260-262; accord *Levine* v. *United States* (1960) 362 U.S. 610, 617 [4 L.Ed.2d 989, 995, 80 S.Ct. 1038]; *Brown* v. *United States* (1959) 359 U.S. 41, 49 [3 L.Ed.2d 609, 616, 79 S.Ct. 539].)[8] ■ In this regard, it is well

---

[8]A host of statutory provisions reflect this relationship between the grand jury and its convening court. Thus, the court determines when a grand jury should be empaneled (Pen. Code, §§ 904, 904.5, 904.6, 904.7), appoints the foreman of the grand jury (Pen. Code, § 912), instructs the grand jury as to its powers and responsibilities (Pen. Code, §§ 914, 914.1), approves expenditures for investigatory personnel (Pen. Code, §§ 914.5, 926, 931), and determines whether to permit public grand jury sessions. (Pen. Code, § 939.1.)

established that the convening court "may at any time, in the exercise of its jurisdiction, order [the grand jury] to be discharged." (*In re Gannon, supra,* 69 Cal. 541, 547; see Pen. Code, § 915.)

In recognizing that the grand jury serves as an integral part of the court system, subject to the court's general supervision, we do not at all diminish the full independence of action which the grand jury must, and does, enjoy in performing its vital investigatory and reporting function. ■ The superior court must respect the grand jury's independence of judgment; the court has no authority either to impose its own views on the grand jury or to suppress a report simply because it considers it ill-advised, insufficiently documented or even libelous. (See Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play?* (1955) 55 Colum.L.Rev. 1103, 1133.)

Petitioner, however, seeks to extend the grand jury's independence to indefensible extremes, arguing that even when a grand jury violates its statutory mandate, a superior court has no choice but to file an unlawful report. Petitioner contends that nothing in the codes authorizes the courts to do otherwise and that without statutory authorization the court may not refuse to accept any proposed report. For several reasons, we cannot agree with this contention.

First, although there is no statute which explicitly authorizes the superior court to refuse to accept an unauthorized report,[9] such authority is implicit in the statutory provisions establishing definite, albeit broad, limits for the grand jury's reporting power. In the absence of judicial authority to refuse to file an unauthorized report, the established statutory limits would be largely meaningless. Thus, for example, if a superior court were obligated to file *any* proposed report, a grand jury could—despite the clear proscription of section 939.9 (see fn. 6, *ante*)—simply adopt the recommendations of some other, perhaps partisan, organization without conducting its own investigation of the

---

[9]Penal Code section 933, the most recent statutory enactment pertaining to grand jury reports, does provide that the grand jury *"shall submit to the presiding judge of the superior court* a final report of its findings and recommendations that pertain to county government." (Italics added.) Although this language could conceivably be construed as a legislative grant of authority to the superior court to review the report, the context of the entire provision makes such a reading questionable. In a later portion of the same provision, the section declares that comments of the board of supervisors on the grand jury report "shall . . . be submitted to the presiding judge of the superior court . . . ." Since the judge could not, of course, properly review any of these latter comments, it appears that the legislative use of the "submission" language was not intended as a grant of reviewing power.

matter. The Legislature could not have intended the limits on the grand jury reporting power to be so easily evaded.[10]

Moreover, not only do the existing statutes suggest the propriety of a limited court review of proposed grand jury reports, but such judicial authority is confirmed by the established common law doctrine in this area.[11] ■ Although the question has not before arisen in California, the numerous cases throughout the United States which have addressed the question uniformly recognize that under the common law the court which convenes a grand jury has the authority to refuse to file a report that violates governing legal standards. For example, in *Burke* v. *Oklahoma* (1894) 2 Okla. 499 [37 P. 829, 836], the Supreme Court of Oklahoma held: "The court is not bound to receive and accept from the grand jury everything which it may present. One of the legal and judicial steps to be taken before any return of the grand jury becomes . . . [a] report is that it must be presented to and received by the court; and the court has a right, before accepting it and receiving it, to return it to the

---

[10]Petitioner contends that under all circumstances the only available remedy is for an individual harmed by an unauthorized report to bring a libel action against the grand jurors. In this regard, petitioner points to Penal Code section 930 which provides that a comment in a grand jury report upon an individual who is not indicted is not privileged. A libel action, however, will generally not be an appropriate means to challenge a report which is illegal because the grand jury conducted no personal investigation or exceeded its proper sphere of inquiry. Nothing in the language of section 930 indicates that the provision was intended to preclude a superior court from refusing to file an illegal grand jury report.

[11]*Fitts* v. *Superior Court* (1936) 6 Cal.2d 230 [57 P.2d 510] establishes the propriety of considering common law principles as supplementary to the applicable California statutes relating to grand juries. The question at issue in *Fitts* was the number of grand jurors necessary to return an accusation against a public official. No statute specifically spoke to this point, but the district attorney claimed that a general provision in the Penal Code, declaring that a majority generally had authority to act for any group of individuals, governed and authorized an accusation approved by 11 of the 19 grand jurors. The *Fitts* court rejected this contention, and concluded that the general common law rule requiring the concurrence of 12 grand jurors to support any action of the grand jury should be applied.

In reaching this conclusion the court rejected the contention that the California grand jury was a "purely" statutory body, wholly distinct from its common law predecessor. The court declared: "The [California] grand jury system is a product of the common law. . . . The members of the [1849] constitutional convention in providing for a grand jury must have had in mind the grand jury as known to the common law. . . . The Constitution of 1879 did not attempt to change the historic character of the grand jury, and the system its members had in mind was evidently the same system that had come down to them from the common law. It is in no sense a statutory grand jury as distinguished from the common-law grand jury . . . . We must conclude . . . that the Constitution of 1879 when it refers to the grand jury refers to it as it had always been known and understood prior thereto." (6 Cal.2d at pp. 240-241.) (See generally Kennedy & Briggs, *Historical and Legal Aspects of the California Grand Jury System* (1955) 43 Cal.L.Rev. 251, 262.)

grand jury, or to receive it, as the court thinks proper. This required judicial action. . . . [I]t was not only the power, but it was the duty, of the court to take the matter, and give it fair and candid consideration, before passing judgment upon its propriety and validity."

█ The decisions of every other jurisdiction which has passed on this question are just as emphatic in confirming the common law authority of a court to review the legality of a proposed grand jury report. (See *In re Presentment of Camden County Grand Jury* (1952) 10 N.J. 23 [89 A.2d 416, 444]; *Ex parte Cook* (1940) 199 Ark. 1187 [137 S.W.2d 248, 249]; *State* v. *Bramlett* (1932) 166 S.C. 323 [164 S.E. 873, 876-877]; *State* v. *Wurdeman* (Mo. 1916) 187 S.W. 257, 259; *Bennett* v. *Kalamazoo Circuit Judge* (1914) 183 Mich. 200, 212 [150 N.W. 141, 144]. See generally Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play?* (1955) 55 Colum.L.Rev. 1103, 1132; Note, *The Grand Jury: Power, Procedures and Problems* (1973) 9 Colum.J. L. & Soc. Prob. 681, 704.) Petitioner has cited no authority to the contrary.

█ In light of the uniformity of these common law decisions, and the implicit authority which we find in the various statutory limitations on the grand jury's reporting power, we conclude that superior courts in this state do possess a limited authority to refuse to file proposed grand jury reports which exceed the grand jury's authority.[12] █ █ █ As we have stressed above, however, the superior court's reviewing authority in this area is narrowly circumscribed, for the court may only refuse to file a proposed report if it exceeds the grand jury's lawful reporting powers.[13] Given the limited scope of the superior court's reviewing authority, we believe petitioner's fears of judicial "censorship" of grand jury investigations are unfounded.[14]

---

[12]Cf. *Craemer* v. *Superior Court* (1968) 265 Cal.App.2d 216, 225-226 [71 Cal.Rptr. 193]. See also Note, *The Grand Jury Report as an Infringement of Private Rights* (1972) 23 Hastings L.J. 561, 582-584.

[13]A superior court's refusal to file a proposed grand jury report is, of course, subject to appellate review. (See *In re Presentment of Camden County Grand Jury* (1952) 10 N.J. 23 [89 A.2d 416, 444].) Appellate courts have not hesitated to reverse a lower court decision when it is demonstrated that the court suppressed a legally valid report. (See *Clemmons* v. *State* (Fla.App. 1962) 141 So.2d 749, 756-757.)

[14]The dissent's suggestion that the present opinion condones censorship of First Amendment expression ignores several critical points. In the first place, the grand jury is not a private body and its report is not an expression of private citizens' views; rather the grand jury is a governmental body and its official report, carrying the aura of a judicial pronouncement, is authorized only within established legal limits. Second, although the dissent (without authority) suggests otherwise, as discussed above the grand jury has from its inception in Anglo-American jurisprudence always been considered an integral part of the judicial branch—"an instrumentality of the courts." (*In re Shuler, supra,* 210

We adjudicate only the district attorney's contention that the superior courts have *no* authority under *any* circumstances to review a proposed grand jury report before filing; we reject that absolute denial of authority. We have pointed out two situations which inexorably call for such exercise of the superior court's power; they are enough to refute the district attorney's extreme position. Although other situations may support a superior court's refusal to file a grand jury report, we do not consider, or pass upon them at this time.

As in so many other instances, we face here competing values; the value of the protection of the public through the unrestricted power of the grand jury to probe and expose the operations of government, as opposed to the value of the protection of the individual from unlawful and unauthorized conduct of that tribunal. Although we recognize the advantage of a wide range in the grand jury's investigatory authority, we do not accept the extreme position that such authority is absolute or that its sweep is so extensive that under any and all circumstances its proposed reports may be publicized. Since the grand jury is an arm of the court and part of the judicial system, the court, subject to appellate review, may in some instances, limited though they may be, refuse to file a proposed report. It would be anomalous for a court of law to participate in the law's violation by filing a report that was itself the statute's violation.

In light of the above conclusion, petitioner's request for a writ of prohibition restraining the superior court from reviewing any grand jury report prior to filing is denied.

Wright, C. J., Sullivan, J., and Clark, J., concurred.

**MOSK, J.**—I dissent.

Preliminarily two observations are appropriate. First, it should be clearly understood that we are here concerned with the grand jury's investigative function, as distinguished from its accusatory role. The latter is an integral part of the criminal judicial process and thus invokes issues of constitutional dimension not apposite in this proceeding.

Second, no party appears to doubt that the superior court judge, in refusing to accept and file the grand jury's report, was well motivated.

Cal. 377, 405.) In applying the established common law rule that a court may prevent one of its instrumentalities from taking action explicitly prohibited by statute, we certainly give no sanction to governmental suppression of protected expression.

But as the melancholy lessons of history teach us, the road to censorship is paved with good intentions.

The majority sugar-coat their conclusion by referring to "restricted" court control of grand jury reports (*ante*, p. 434) and "limited" authority to bury a proposed report (*ante*, pp. 440, 441). However polite the terminology, the ultimate result is that the grand jury, a duly constituted public agency, is denied the right to file its investigative conclusions with the court, and thus its report must remain forever concealed from the public. Censorship by any other name—restricted or limited—is nevertheless censorship. And censorship by a benevolent censor is no less censorship.

All parties concede there is no statutory authority for the superior court to refuse to accept and file the grand jury report, which by law shall be submitted to the presiding judge of that court. (Pen. Code, § 933.) That should end all judicial inquiry. However, the superior court relies on a vague and undefined inherent power to coerce the grand jury into refraining from reporting on subjects beyond the court's subjective concept of grand jury limitations. The anomalous result is that the court expands its jurisdiction in order to contract the jurisdiction of the grand jury.

As the majority note, a number of California cases have recognized the grand jury's investigative role. The case of *Monroe* v. *Garrett* (1971) 17 Cal.App.3d 280, 284 [94 Cal.Rptr. 531], is cited (*ante*, p. 437), but the majority overlook the impact of the very language they quote: "The *public* may, of course, ultimately conclude that the jury's fears were exaggerated or that its proposed solutions are unwise. But the debate which reports . . . provoke [can] lead only to a better understanding of public governmental problems." (Italics added.) The *public*, not a judge, is to draw conclusions from the grand jury report. The *public* is to be provoked into debate; the judge is not to prevent debate by suppressing the report.

There are a number of cases which refer to the grand jury as a "judicial body," and from such references the majority leap to the loose generalization of an 1886 dictum (*In re Gannon* (1886) 69 Cal. 541, 543 [11 P. 240]) that the grand jury "is under the control of the court . . . ." I cannot believe that the majority really mean to approve absolute court control of a grand jury.

In any event, the cases employed to support the majority's conclusion

are inapposite. *Gannon* was a contempt of court matter. *Ex parte Sternes* (1889) 82 Cal. 245 [23 P. 38], was a habeas corpus petition involving reasonable or probable cause to hold the petitioner for trial. *In re Shuler* (1930) 210 Cal. 377, 405 [292 P. 481], used the expression quoted in the majority opinion (*ante,* p. 438) in a criminal context ("an instrumentality of the courts"), but the same case continued on to declare that the grand jury is charged with an "inquisition into the conduct of citizens and of public institutions and officials, and *is to be as fully protected in the exercise of its powers and functions in that regard as the courts themselves.*" (Italics added.)

*Turpen* v. *Booth* (1880) 56 Cal. 65, 69, involved a claim for civil damages against grand jurors; and in deciding against liability, the court said of grand jurors that "in the performance of such duties the law invests them with judgment and discretion." *McFarland* v. *Superior Court* (1948) 88 Cal.App.2d 153, 160 [198 P.2d 318], involved a writ of prohibition growing out of a manslaughter prosecution; said the court of the grand jury, "It is entitled to the respect and support of the courts."

*Irwin* v. *Murphy* (1933) 129 Cal.App. 713 [19 P.2d 292], not only fails to support the majority, it contains a discussion leading to a directly contrary conclusion. Said the court, at page 717: "Appellant argues that when the commission of a public offense is being inquired into or investigated the power of the grand jury is limited to a definite charge, whether by indictment or otherwise, against the person being investigated; that if the grand jury does not find sufficient evidence to indict, the power of the body terminates and any act thereafter is in excess of jurisdiction. We think this too narrow a construction to be placed upon the powers of a grand jury. As a matter of routine, if nothing further, *the power to investigate includes as an integral part thereof the right and duty to report the result of such investigation.*" (Italics added.)

The several authorities from other jurisdictions cited by the majority are not helpful. They originate from states the grand jury traditions of which are so divergent that in totality they prove little other than that the digests will provide a case for virtually any proposition. The fact remains that no California case has held, or suggested, that a right exists in a judge to subject to prior approval the work product of the grand jury.

Indeed, no statute gives to a court the duty or right to investigate or report on county or other governmental affairs. Nevertheless the ability to suppress the whole, or to excise parts, of a report, in effect places with the court responsibility over the investigating and reporting of matters

entirely extraneous to the judicial function. By authorizing this procedure, the majority thrust the court into the maelstrom of local government controversy. For if the court may suppress reports with which it finds fault, a failure to suppress will be deemed approval.

The proper course is the traditional course. The grand jury may file its report—with the court only because the law directs that to be the resting place—and the grand jury alone assumes the responsibility for content. If there is to be any prior restraint on the grand jury, its work or its work product, the Legislature must authorize it. To date that has not been done.

The majority declare that fears of judicial censorship of grand jury investigations "are unfounded." (*Ante*, p. 441.) While they are understandably reluctant to discuss specifics of the case which gave rise to the problem before us, the majority graphically illustrate, by their conclusion, that there are very real perils to free public communication by a grand jury which has performed its duties.

The grand jury in this case considered operations of the county hospital's pathology department. The interim report sealed by the judge was the result of this investigation; the inquiry had been prompted by testimony of the sheriff-coroner of the county. The sheriff-coroner recited specific instances of maladministration of the pathology department of the county hospital, and related his apprehensions over the manner in which the alleged irregularities could affect homicide investigations, autopsies, insurance and potential civil liability. The hospital administrator is a county department head appointed by the board of supervisors, and the hospital itself is a revenue collecting agency of the county. Accordingly there can be no doubt that the grand jury's inquiry was justified under Penal Code section 925 (revenue), section 928 (county officers) and section 933 (county government).

Despite the manifest propriety of the investigation and of the substance of the subsequent report, the superior court judge saw fit to arbitrarily suppress the document. Such result in circumstances as clear as these certainly fails to warrant the sanguinity of the majority in discounting as "unfounded" any fears of judicial censorship.

But if we assume arguendo that the body proposed to report on subjects outside its ken, such a report might reflect upon its source, yet the irrelevance or impropriety of the official document does not justify its suppression. There are traditional and statutory boundaries to grand jury

activities. Penal Code section 939.9 is cited as an example. But if an irresponsible grand jury elects to violate that or any other statutory inhibition, it may suffer penalties the law provides, if any, but it cannot be restrained from so acting.

A legislature may not enact an unconstitutional statute; such an act is wholly beyond its authority and jurisdiction. Yet no court would attempt to prevent the legislative body, by injunction or other order, from proceeding as it sees fit. As an independent public body it has the right to proceed, even in error. A court cannot enjoin the publication of a libel, prevent the erroneous exercise of discretion by a public official, or prohibit the commission of a crime. By parity of reasoning, a court cannot prevent a grand jury from expressing views on subjects the court believes improper, whether by direct order or by suppression of a report. When the court here attempted to do so, it acted on a misguided notion that its general advisory function embraced the role of censor. Yet pertinent code sections refer only to the court's duty to *instruct* the grand jurors (Pen. Code, § 914.1), to *charge* them as to their duties (*ibid.*), and to *advise* them *when such advice is asked* (Pen. Code, § 934). No authorization to tamper with the grand jury report is given to the court. Indeed, under Penal Code section 928, the grand jury is to submit a copy of its report on needs of county officers directly to each member of the board of supervisors. Since such copy does not go to the supervisors through the court, it seems clear that the Legislature anticipated no judicial revision.

Justice Black declared in *New York Times Co.* v. *United States* (1971) 403 U.S. 713, 724 [29 L.Ed.2d 822, 830, 91 S.Ct. 2140]: "Secrecy in government is fundamentally anti-democratic, perpetuating bureaucratic errors. Open debate and discussion of public issues are vital to our national health." Justice Frankfurter wrote in *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 532 [96 L.Ed. 1098, 1121, 72 S.Ct. 777]: "To paraphrase Doctor Johnson, if nothing may be shown but what licensors may have previously approved, power, the yea-or-nay-saying by officials, becomes the standard of the permissible." Or, to quote the blunt characterization by Justice Douglas in *Hannegan* v. *Esquire, Inc.* (1946) 327 U.S. 146, 158 [90 L.Ed. 586, 593, 66 S.Ct. 456]: "[A] requirement that literature or art [or public reports] conform to some norm prescribed by an official smacks of an ideology foreign to our system."

When Plato wrote that poets should be banished from his idyllic republic, he based his magisterial proposal on grounds that have been

repeated by all the censorial thereafter: the poets taught false ideas. The censors of the world hold their posts as self-appointed guardians of their own particular narrow concept of orthodoxy—in literature, art, and government. The judge in this instance believed he was serving the public interest. But it was *his* interpretation of the public interest. Obviously the grand jury marched to a different drummer. The jury conclusions may have been wrong. But they had a right to be wrong. It is axiomatic that in a democratic society an evil is never corrected by suppression or censorship; it is made right by exposure to the market-place of thought, discussion and controversy.

I would issue the writ.

McComb, J., and Burke, J.,* concurred.

Petitioners' application for a rehearing was denied February 26, 1975. McComb, J., and Mosk, J., were of the opinion that the application should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.