[No. F010582. Fifth Dist. Mar. 23, 1989.]

UNNAMED MINORITY MEMBERS OF THE 1987-1988 KERN
COUNTY GRAND JURY, Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
ROBERT T. BACA, Real Party in Interest.

**COUNSEL**

T. A. Goldner, Michael Lynn Gabriel, Klein, Wegis & Duggan, Barry L. Goldner and David J. Cooper for Petitioners.

B. C. Barmann, County Counsel, and Robert D. Woods, Deputy County Counsel, for Respondent and Real Party in Interest.

## OPINION

**HAMLIN, J.**—In this original proceeding, five unnamed members of the 1987-1988 Kern County Grand Jury (the Grand Jury) seek a writ of mandate to compel the Kern County Superior Court (the Superior Court) to order the filing and publication of their separate minority report as a part of the Grand Jury's final report.

■ Petitioners' challenge to the Superior Court's refusal to file their minority report requires this court to decide whether the superior court has the authority to refuse to accept for filing and publication a separate report submitted only to the presiding judge of the superior court by those members of the grand jury who are unwilling to join in the grand jury's final report.

We shall hold that a minority report that was never submitted to the full membership of the grand jury for approval by a majority of its members as a minority report or view on a matter investigated by the grand jury is not an authorized report of the grand jury. Accordingly, we conclude that the Superior Court in this instance acted properly in refusing to accept the minority report for filing and publication.

### PROCEDURAL BACKGROUND

On or about June 20, 1988, five unnamed members of the Grand Jury submitted to the Superior Court a so-called minority report, to be filed along with the final Grand Jury report they were unwilling to sign. The following day the Superior Court declined to allow the minority report to be filed or issued.

On June 28, 1988, the unnamed members filed their petition for writ of mandate requesting this court to order the Superior Court not to file the Grand Jury's final report or, in the alternative, to file both the final report and the minority report. On June 29, 1988, this court declined to issue a stay and ordered real party in interest to file with this court, on or before July 11, 1988, a reply to the petition.

On September 22, 1988, this court issued an alternative writ of mandate directing the Superior Court to either order that the so-called minority report be filed and published or to show cause why a peremptory writ of

mandate granting such relief should not issue. That alternative writ directed the Superior Court to decide whether or not to comply by October 11, 1988, and directed petitioners to inform the court by letter of the Superior Court's decision.

The Superior Court elected not to order the proposed minority report to be filed and to appear and show cause why the report should not be filed. On October 21, 1988, in light of that election by the Superior Court, this court set a hearing on the order to show cause and directed a written return to be filed by the Superior Court. After that return was filed, petitioners filed a reply.

## DISCUSSION

### I.

■ We note preliminarily that appellate jurisdiction to review the superior court's refusal to file a proposed grand jury report is expressly recognized in *People* v. *Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 441, footnote 13 [119 Cal.Rptr. 193, 531 P.2d 761] (hereafter cited as *1973 Grand Jury*). ■ That court went on to hold that the superior court may properly refuse to file an unauthorized report of the grand jury. It reached that conclusion notwithstanding the absence of any California statute explicitly authorizing such judicial action. The court considered it implicit in the statutory scheme and the common law doctrine in this area. (*Id.* at pp. 439-441.)

In *McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162 [245 Cal.Rptr. 774, 751 P.2d 1329], the Supreme Court was again directly concerned with the nature and purpose of the grand jury report. ■ It first explained the three basic functions of the California grand jury as follows: ". . . to weigh criminal charges and determine whether indictments should be returned ([Pen. Code,] § 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office ([Pen. Code,] § 922; see Gov. Code, § 3060 et seq.); and to act as the public's 'watchdog' by investigating and reporting upon the affairs of local government (e.g., [Pen. Code,] §§ 919, 925 et seq.). Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California." (*Id.* at p. 1170.) The court then commented on grand jury reports: "The reporting function of the grand jury is central to its effective operation in the public interest.

Grand juries have issued reports on the conduct of public officials and other matters pertaining to local governance for hundreds of years. (See Comment (1976) 64 Cal.L.Rev. 297, 301, citing 1 Pollack & Maitland, The History of English Law (2d ed. 1898) p. 152.) The modern final report, containing the grand jury's findings and recommendations on the subjects of its investigations (see [Pen. Code,] § 933, subd. (a)), is the normal end product of the grand jury's activity in the performance of its watchdog function and is 'the only formal means by which the grand jury can hope to effectuate its recommendations. . . .' (Note, *Some Aspects of the California Grand Jury System* [(1956)] 8 Stan.L.Rev. at p. 651.)" (*Id.* at pp. 1170-1171.) In summary, the court stated: "Broad though they are, the grand jury's powers are only those which the Legislature has deemed appropriate. Attempts to exercise powers other than those expressly conferred by statute have been consistently rebuffed. [Citations.]" (*Id.* at p. 1179.)

██ ██ In discussing specifically the grand jury's reportorial duties, the *McClatchy* court pointed to the provisions of Penal Code section 933, subdivision (a), that require the grand jury to submit to the presiding judge of the superior court *a final report* of its findings and recommendations that pertain to county government matters. (Italics added.) The statutory language of that subdivision is specific that only a single final report is contemplated. Moreover, logic dictates that a document cannot be a report of the grand jury unless it has been considered by the full membership of the grand jury. The record before us establishes, and petitioners have conceded, that the minority report was never submitted to the grand jury as a whole for its consideration and approval as a minority report, recommendation or finding on any matter the grand jury investigated.[1] In this circumstance, common sense dictates the conclusion that the minority report does not constitute a report of the grand jury authorized by statute. Contrary to petitioners' assertion, a requirement that a minority view on matters investigated be submitted to the full membership of the grand jury for inclusion as a part of the report of the grand jury in no way inhibits the functions of the grand jury.[2] The Superior Court did not err in refusing to accept the minority report for filing.

---

[1] The reports of the Yuba County Grand Jury for 1985-1986 and 1986-1987 and the Sierra County Grand Jury for 1982-1983, of which petitioners have requested this court to take judicial notice, include minority reports on specific matters investigated by the grand jury as a whole. Thus, contrary to petitioners' contention, those reports provide no precedent for the acceptance of the minority report in this case.

[2] We express no opinion on what would be the proper ruling on a request to file an expression of a minority recommendation or view on a matter investigated by the grand jury which a majority of the grand jury have refused to include in the grand jury's report.

## II.

■ As an alternative ground for upholding the Superior Court's refusal to accept the minority report for filing and publication, we consider the contents of the minority report.[3]

In *1973 Grand Jury, supra,* 13 Cal.3d at page 434, the Supreme Court emphasized that the superior court's role in reviewing reports of the grand jury "is strictly confined to ensuring that reports do not extend beyond the boundaries of the grand jury's broad reportorial power. . . . The court's sole function in this realm lies in its power to prevent the official filing of an illegal report: for example, a report on matters which the grand jury has not itself investigated . . . ."

Here, the minority report was not based on the Grand Jury's own investigation as required by Penal Code section 939.9 and the foregoing excerpt from the court's opinion in *1973 Grand Jury, supra,* 13 Cal.3d 430. Viewed in its most favorable light, the minority report consists only of findings and recommendations on investigations made only by the five-member minority and the five-member minority's criticism of the actions and shortcomings of the Grand Jury and the procedures it adopted in carrying out its functions. Thus, for this additional reason, the Superior Court did not exceed its authority in refusing to accept the minority report for filing and publication.

The petition for writ of mandate is denied.

Martin, Acting P. J., and Baxter, J., concurred.

Petitioner's application for review by the Supreme Court was denied June 1, 1989. Mosk, J., was of the opinion that the application should be granted.

---

[3] Although we direct our attention primarily to the minority report filed as a confidential document with the petition for writ of mandate, our discussion applies equally to the contents of the original minority report that was voluntarily withdrawn and rewritten. That withdrawn report included recommendations and conclusory statements based on an investigation by the five-member minority that were not contained in the minority report attached to the petition for writ of mandate.