OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-505 |
| of | : | |
| | : | August 25, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE GARY T. YANCEY, DISTRICT ATTORNEY, CONTRA COSTA COUNTY, has requested an opinion on the following question:

Is the additional grand jury authorized by Penal Code section 904.6 restricted to criminal matters only, or may it also perform civil oversight functions?

CONCLUSION

The additional grand jury authorized by Penal Code section 904.6 is restricted to criminal matters and may not perform civil oversight functions.

ANALYSIS

The functions of a county grand jury were summarized by the Supreme Court in *McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162 as follows:

"The California grand jury has three basic functions: to weigh criminal charges and determine whether indictments should be returned (§ 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office (§ 922; see Gov. Code, § 3060 et seq.); and to act as the public's `watchdog' by investigating and reporting upon the affairs of local government (e.g., §§ 919, 925 et seq.). Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California. (Mar, *The California Grand Jury; Vestige of Aristocracy* (1970) 1 Pacific L.J. 36, 59 [estimating 85 percent of average grand jury's time spent investigating county agencies]; Note, *Some Aspects of the California Grand Jury System* (1956) 8 Stan. L.Rev. 631, 648 [estimating 83 percent of California grand jury proceedings spent in watchdog role].) As we noted in *1973 Grand Jury*, `In California, unlike some other American jurisdictions, the grand jury's role as a

vigilant `watchdog' over the operations of a variety of local governmental activities has a long and well respected heritage.' (*1973 Grand Jury, supra,* 13 Cal.3d 430, 436, fn. omitted.)" (*Id.*, at p. 1170, fn. omitted.)

In counties having a single grand jury, each of the three functions will be performed by that body. It is to be observed, however, that during the period 1970 to 1991, several counties were given the authority to have two grand juries, and the Legislature separated the functions for the two grand juries in different ways for these counties. (See former Pen. Code, §§ 904.5, 904.7, 904.8, 904.9.)[1]

In 1991 the Legislature repealed the above cited specific statutes authorizing two grand juries and amended section 904.6, originally applicable only in San Francisco, to be applicable in all counties. (Stats. 1991, ch. 464.) Section 904.6 gives rise to this request for our opinion and presently reads:

"(a)  In any county or city and county, the presiding judge of the superior court may order and direct the impanelment, at any time, of one additional grand jury pursuant to this section.

"(b)  The presiding judge shall select persons, at random, from the list of trial jurors in civil and criminal cases and shall examine them to determine if they are competent to serve as grand jurors. When a sufficient number of competent persons have been selected, they shall constitute the additional grand jury.

"(c)  Any additional grand jury which is impaneled pursuant to this section may serve for a period of one year from the date of impanelment, but may be discharged at any time within the one-year period by order of the presiding judge. In no event shall more than one additional grand jury be impaneled pursuant to this section at the same time.

"(d)  Whenever an additional grand jury is impaneled pursuant to this section, it may inquire into any matters which are subject to grand jury inquiry and shall have the sole and exclusive jurisdiction to return indictments, except for any matters which the regular grand jury is inquiring into at the time of its impanelment.

"(e)  It is the intent of the Legislature that all persons qualified for jury service shall have an equal opportunity to be considered for service as criminal grand jurors in the county in which they reside and that they have an obligation to serve, when summoned for that purpose. All persons selected for the additional criminal grand jury shall be selected at random from a source or sources reasonably representative of a cross section of the population which is eligible for jury service in the county."

The issue presented for resolution is whether, pursuant to subdivision (d) of section 904.6, the additional grand jury may inquire into civil oversight matters, or whether it is restricted to criminal matters. We conclude that the function of the additional grand jury is restricted to criminal matters.

In interpreting the provisions of section 904.6, we are guided by several well established principles of statutory construction. "[T]he objective of statutory interpretation is to

---

[1]All references hereafter to the Penal Code are by section number only.

ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "`The intent prevails over the letter, and the letter will, if possible, be so read as to confirm to the spirit of the act.'" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "[I]t is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166.) "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "Statutes in pari materia should be construed together." (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 744.)

An examination of the legislative history of section 904.6 discloses the Legislature's intent to authorize the additional grand jury as a criminal grand jury only. At the time the statute was amended in 1991 to include all counties throughout the state, with the specific statutes governing the six counties being repealed, the committee reports concerning the proposed legislation refer to the additional grand jury as performing only a criminal function. For example, The Senate Committee on Judiciary report for the committee hearing on July 16, 1991, provided the following analysis:

"Existing law provides for the establishment of a grand jury in each county. This body of citizens is `sworn to inquire of public offenses committed or triable within the county.' (P.C. Sec. 888.) The grand jury also serves in a civil `watchdog' capacity over local government, investigating the performance of agencies and officials within its venue and recommending such changes as may be in the public interest.

"The long-standing right of grand juries to issue indictments was qualified by Hawkins v. Superior Court (22 Cal.3d 572) in 1978, wherein the court opined that `due process requires that an indicted defendant is entitled on his timely motion to a post-indictment preliminary hearing.' Thus, as a preliminary hearing was required to follow a grand jury proceeding, the indictment was generally abandoned in favor of a preliminary hearing on the charges in municipal court, and the function of the grand jury was limited to governmental oversight and the occasional criminal action in cases of official malfeasance.

"Last year the voters adopted Prop. 115, the `Crime Victims Justice Initiative,' which overruled Hawkins by permitting an indictment as the initiation of criminal proceedings without a requirement of subsequent preliminary hearing. District attorneys were free to choose indictment, rather than hearing, as the course of action in pursuing a case. Some have chosen to exercise this option freely, therefore imposing a significant criminal workload on grand juries still responsible for their civil obligations.

"......................................

"This bill would bifurcate the institution of the grand jury into two forms, civil and criminal, authorizing counties to combine both functions in a single grand jury, or to establish independent criminal grand juries upon the decision of the presiding judge of the superior court or at the request of the District Attorney or the

Attorney General. The civil grand jury would be authorized to inquire into county matters or return accusations of misconduct by public officials in the manner such juries functioned prior to Proposition 115 and pursuant to Hawkins; the criminal grand jury would be authorized to return indictments for public offenses pursuant to Proposition 115. Individuals serving in the capacity of criminal grand jurors, whether on an independent panel or a unified body bringing an indictment in a criminal case, would be required to meet standards specified for criminal grand jury service.

        "......................................

        "The purpose of this measure is to permit counties to establish additional grand juries to handle criminal indictments as authorized by Proposition 115, composed in a manner to preclude challenge for the `technicality' of an unrepresentative panel.

        "...... ..................................

        "Recently this committee heard SB 672 (Davis), which proposed an additional criminal grand jury for Ventura County alone. In the analysis it was suggested that if the authorization for a criminal grand jury were to be extended to one county it should be extended universally, considering the anticipated impact of Proposition 115 on caseload. This bill would seem responsive to that suggestion."

Similarly, the report of the Assembly Committee on Public Safety for the committee hearing on April 9, 1991, stated in part:

        "This bill will leave the selection process and powers of the civil grand jury intact with the exception of the power to issue criminal indictments. That function will reside exclusively with the criminal grand jury.

        "......................................

        "Since this bill extends the authority to impanel a criminal grand jury to all counties, it repeals the existing specific authority of Los Angeles, San Mateo, Contra Costa, and Marin counties to impanel an additional grand jury."

The report of the Assembly Committee on Ways and Means for the committee hearing on May 1, 1991, stated: "This bill would authorize counties to impanel criminal grand juries with the power to indict."

        Not only does the legislative history of section 904.6 support the conclusion that the additional grand jury is to be restricted to a criminal function, so do other provisions of the statutory scheme. Standing alone, the language of section 904.6, subdivision (d) suggests that both criminal and civil functions may be performed by the additional grand jury. This is particularly true when it is seen that the Legislature, whenever restricting the additional grand jury to either civil matters or criminal matters in the past, did so in no uncertain terms. (See former §§ 904.5, 904.7, 904.8.)

        However, we do not believe that section 904.6 may be read in isolation, especially in light of its legislative history. Specifically, section 904.6 must be construed in conjunction with section 888. Section 888 provides:

"A grand jury is a body of the required number of persons returned from the citizens of the county before a court of competent jurisdiction, and sworn to inquire of public offenses committed or triable within the county.

"Each grand jury *or, if more than one has been duly impaneled pursuant to Sections 904.5 to 904.9, inclusive, one grand jury in each county,* shall be charged and sworn to investigate or inquire into county matters of civil concern, such as the needs of county officers, including the abolition or creation of offices for, the purchase, lease, or sale of equipment for, or changes in the method or system of, performing the duties of the agencies subject to investigation pursuant to Section 914.1." (Emphasis added.)

Additionally, section 914.1 provides:

"When a grand jury is impaneled, for purposes which include the investigation of, or inquiry into, county matters of civil concern, the judge of the superior court of the county, in addition to other matters requiring action, shall call its attention to the provisions of Chapter 1 (commencing with Section 23000) of Division 1 of Title 3, and Sections 24054 and 26525 of the Government Code, and instruct it to ascertain by a careful and diligent investigation whether such provisions have been complied with, and to note the result of such investigation in its report. At such time the judge shall also inform and charge the grand jury especially as to its powers, duties, and responsibilities under Article 1 (commencing with Section 888) of Chapter 2, and Article 2 (commencing with Section 925), Article 3 (commencing with Section 934) of this chapter, Article 3 (commencing with Section 3060) of Chapter 7 of Division 4 of Title 1 of the Government Code, and Section 17006 of the Welfare and Institutions Code."

An examination of the provisions which must be called to the grand jury's attention pursuant to section 914.1 with respect to "county matters of civil concern" include *all* matters of civil oversight within the grand jury's jurisdiction, whether there is a single grand jury in the county, or whether these are two grand juries.

Accordingly, the provisions of sections 888, 904.6, and 914.1, when construed together, lead to the inevitable conclusion that the grand jury authorized by section 904.6 is restricted to criminal matters and may not perform civil oversight functions. Section 888 specifically refers to section 904.6 and contemplates that when there are two grand juries in a county empaneled under the provisions of the latter statute, only one grand jury may be charged and sworn to inquire into civil matters. This of necessity would exclude the additional grand jury impaneled pursuant to section 904.6 since that grand jury has "sole and exclusive jurisdiction to return indictments." If the additional grand jury of section 904.6 was the one charged with civil oversight functions as well, that would leave the county with a regular grand jury having no civil oversight functions *and* no power to return indictments. We may not interpret section 904.6 to produce such an absurd result.

Accordingly, we believe that the additional grand jury authorized by section 904.6 is to be a criminal grand jury and the other grand jury within the county is to be the civil grand jury. This conclusion is supported by the statute's legislative history, the provisions of sections 888 and 914.1, and the language of subdivision (e) of section 904.6 in which the jurors are referred to as "criminal grand jurors" and the grand jury is referred to as the "additional criminal grand jury."

In summary we conclude that the additional grand jury authorized by section 904.6 is restricted to criminal matters only and may not perform civil oversight functions.

* * * * *