TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| | :      No. 95-113 |
| of | : |
| | :      September 13, 1995 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

_____

THE HONORABLE MIKE THOMPSON, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a grand jury investigate and report upon the manner in which a school district performs its duties and functions?

CONCLUSION

A grand jury may investigate and report upon the manner in which a school district performs its duties and functions.

ANALYSIS

The general powers and duties of county grand juries (Pen. Code, §§ 914-945)[1] include the investigation of county, city, and district affairs (see, e.g., §§ 925, 925a, 928, 933.1-933.5). As stated by the California Supreme Court in *People* v. *Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 436, regarding the civil duties of a grand jury:

"In California, unlike some other American jurisdictions, the grand jury's role as a vigilant `watchdog' over the operations of a variety of local governmental activities

_____

[1]All section references are to the Penal Code unless otherwise indicated.

has a long and well respected heritage.  As long ago as 1880, the Legislature assigned to the grand jury the responsibility of making `a careful and complete examination of the books, records and accounts of all officers of the county . . . *and to report thereon*.' (Italics added.)  (Pen. Code Ann. 1880, ch. 109, p. 43; see Pen. Code, § 925.)  Over the ensuing years, the Legislature has continually expanded the boundaries of the grand jury's investigatory and reportorial domain, authorizing the grand jury to make inquiry into and report on the `needs of all county officers' including the desirability of abolishing or creating county offices and the adequacy of the existing `method or system of performing' county duties (Stats. 1911, ch. 200, § 1, p. 373; Pen. Code, § 928), the propriety of the salaries paid to various public officials (Stats. 1943, ch. 93, § 1, p. 798; Pen. Code, § 927), the operation of special-purpose assessing or taxing districts located wholly or in part within the county (Stats. 1961, ch. 1461, § 2, p. 3313; Stats. 1969, ch. 931, § 1, p. 1870; Pen. Code, § 933.5), and, most recently, the state of the fiscal affairs of any incorporated city within the county (Stats. 1973, ch. 1036, § 3, p. 2055; Pen. Code, § 925a)."   (Fns. omitted.)

As explained subsequently in *Unnamed Minority Members etc. Grand Jury* v. *Superior Court* (1989) 208 Cal.App.3d 1344, 1347-1348, with respect to a grand jury's powers and limitations:

"In *McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162, the Supreme Court was again directly concerned with the nature and purpose of the grand jury report.  It first explained the three basic functions of the California grand jury as follows:  `. . . to weigh criminal charges and determine whether indictments should be returned ([Pen. Code,] § 917); to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office ([Pen. Code,] § 922; see Gov. Code, § 3060 et seq.); and to act as the public's "watchdog" by investigating and reporting upon the affairs of local government (e.g. [Pen. Code,] §§ 919, 925 et seq.).  Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California.'  (*Id*. at p. 1170.)  The court then commented on grand jury reports:  `The reporting function of the grand jury is central to its effective operation in the public interest. Grand juries have issued reports on the conduct of public officials and other matters pertaining to local governance for hundreds of years.  (See Comment (1976) 64 Cal.L.Rev. 297, 301, citing 1 Pollack & Maitland, The History of English Law (2d ed. 1898) p. 152.)  The modern final report, containing the grand jury's findings and recommendations on the subjects of its investigations (see [Pen. Code,] § 933, subd. (a)), is the normal end product of the grand jury's activity in the performance of its watchdog function and is "the only formal means by which the grand jury can hope to effectuate its recommendations. . . ." (Note, *Some Aspects of the California Grand Jury System* [(1956)] 8 Stan.L.Rev. at p. 651.)'  (*Id*. at pp. 1170-1171.)  In summary, the court stated:  `Broad though they are, the grand jury's powers are only those which the Legislature has deemed appropriate.  Attempts to exercise powers other than those expressly conferred by statute have been consistently rebuffed.  [Citations.]' (*Id*. at p. 1179.)"

Our task herein is to determine whether a grand jury may investigate and report upon the substance of a school district's decisions concerning the manner in which it performs its duties and functions. This inquiry requires an examination of section 933.5, which states:

"A grand jury may at any time examine the books and records of any special-purpose assessing or taxing district located wholly or partly in the county or the local agency formation commission in the county, and, in addition to any other investigatory powers granted by this chapter, may investigate and report upon the method or system of performing the duties of such district or commission."

The first issue to be resolved is whether section 933.5 has any application at all to local school districts. Is a school district a "special-purpose assessing or taxing district"?

We answered this question in 46 Ops.Cal.Atty.Gen. 144, 146 (1965), where we concluded that a school district was a "`special purpose assessing or taxing district.'" This conclusion was, in effect, approved by the Court of Appeal in *Board of Trustees* v. *Leach* (1968) 258 Cal.App.2d 281, 286-287, where the court concluded that school districts came within the terms of section 933.5.

We reject the suggestion that thereafter in 1973, the Legislature intended to remove school districts from the scope of section 933.5 when it enacted Revenue and Taxation Code section 2215 (Stats. 1973, ch. 358, § 3) to provide:

"`Special district' means any agency of the state for the local performance of governmental or proprietary functions within limited boundaries. `Special district' includes a county service area, a maintenance district or area, an improvement district or improvement zone, or any other zone or area, formed for the purpose of designating an area within which a property tax rate will be levied to pay for a service or improvement benefiting that area. `Special district' does not include a city, a county, a school district or a community college district."[2]

This definitional language was enacted for purposes of the Revenue and Taxation Code, relating primarily to the state reimbursement of a local agency's costs that are mandated by the Legislature. Similar definitional language (Rev. & Tax. Code, § 95, subd. (m)) has been enacted in implementing property tax allocations required by article XIII A of the Constitution (Proposition 13). We have found no indication of legislative intent that these definitions for tax and revenue purposes were also to govern grand jury powers exercised under the terms of section 933.5.

Had the Legislature intended to "disapprove" our 1965 opinion as well as the court's construction of section 933.5 in *Board of Trustees* v. *Leach, supra,* 258 Cal.App.3d 281, we believe it would have chosen a more direct way than changing the Revenue and Taxation Code; it would have made clear its intent when it subsequently amended section 933.5 itself in 1969 (Stats. 1969, ch. 931, §

---

[2]This statute was amended in 1975 (Stats. 1975, ch. 486, §4) and again in 1980 (Stats. 1980, ch. 801, § 15).

1 [adding investigations of the method or system of performing duties]) or in 1979 (Stats. 1979, ch. 306, § 1 [adding local agency formation commissions]).

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898.) "`The words of the statute must be construed in context, keeping in mind the statutory purpose . . . .'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) With respect to the Attorney General's construction of a statute, "`[i]t must be presumed that the . . . interpretation has come to the attention of the Legislature, and if it were contrary to the legislative intent . . . some corrective measure would have been adopted . . . .'" (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17.) As for a court's construction of a statute, "when the Legislature amends a statute without altering portions of the provision that have been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734.)

Having determined that school districts remain subject to the provisions of section 933.5, we next consider whether the investigatory powers granted by the statute are limited in scope to a school district's "assessing or taxing" functions. In *Board of Trustees* v. *Leach*, *supra*, 258 Cal.App.2d at 287, the court so concluded when it interpreted the statutory language as it then provided:

> "It is our conclusion, therefore, that section 933.5 as to the school district, limits the grand jury's investigation (other than into public offenses and misconduct) to the financial affairs of the district which effect the assessing and taxing powers of the district."

However, in apparent response to this portion of the court's decision, the Legislature amended section 933.5 to add "and, in addition to any other investigatory powers granted by this chapter, may investigate and report upon the method or system of performing the duties of such district." (Stats. 1969, ch. 931, § 1.) The purpose of the 1969 amendment of section 933.5 was explained in the report of the Assembly Committee On Criminal Procedure, dated June 25, 1969, as follows:

> "Under existing law grand juries have the right to examine the books and records of any special purpose assessing or taxing district located wholly or in part in its county.
>
> "This bill . . . gives grand juries the additional authority to investigate and report upon the manner in which the special district carries out its duties.
>
> "In effect, grand juries will now be able to investigate and report on sloppy business practices in addition to their already existing authority to investigate misconduct or corruption in office."[3]

---

[3]Reports of legislative committees may be used to discern legislative intent. (See *Hutnick* v. *United States Fidelity & Guaranty Company* (1988) 47 Cal.3d 456, 465, fn. 7: *Long Beach Police Officer's Assn.* v. *City of Long Beach* (1988) 46

As mentioned above, in 1979 section 933.5 was again amended to include within its scope "the local agency formation commission in the county." (Stats. 1979, ch. 306, § 1.) Local agency formation commissions do not have taxing or assessing authority. (Gov. Code, §§ 56300-56859.) Thus the investigatory powers conferred by section 933.5 may no longer be construed as being limited to an agency's "assessing or taxing" functions. In 64 Ops.Cal.Atty.Gen 900, 902 (1981), we concluded that as amended in 1969 and 1979, the "terms of section 933.5 are not limited to fiscal concerns, but expressly include the method or system `of performing the duties of such district. . . .'"

Since our 1981 opinion, the Legislature has amended section 925a, authorizing a grand jury to investigate and report upon the "operations, accounts, and records of the officers, departments, functions, and the method or system of performing the duties" of a city or joint powers agency. (Stats. 1983, ch. 590, § 1.) It has amended section 933.1, authorizing the investigation and reporting upon the method or system of performing the duties of a redevelopment agency and a housing authority. (Stats. 1986, ch. 279, § 1.) It has enacted section 933.6, authorizing a grand jury to "investigate and report upon the method or system of performing the duties of" any nonprofit corporation established by or operated on behalf of a public entity. (Stats. 1986, ch. 279, § 2.) Similar authority was previously granted with respect to "the method or system of performing the duties of the several offices" of county government. (§ 928.)

In our 1981 opinion, we construed the phrase "method or system of performing the duties" as follows:

". . . The terms `method' and `system' in common parlance connote the means used or the procedure followed in doing a given kind of work or achieving a specified objective. (*Cf.* Webster's Third New Internat. Dict. (1961), p. 1423.) . . . Hence, the investigative authority of a grand jury with respect to special districts encompasses the operational procedure of any such district.

"Procedural considerations, however, are to be carefully distinguished from substantive concerns. Thus, the parameter of operational *procedure* does not extend to an inquiry as to the merit, wisdom, or expediency of substantive policy determinations which may fall within the jurisdiction and discretion of a particular district. . . ." (64 Ops.Cal.Atty.Gen., *supra*, 902; fn. omitted.)

This limited view of the scope of section 933.5[4] is consistent with the legislative history of the statute as discussed above as well as that of related statutes. Most recently, for example, when "the method or system of performing the duties of" a redevelopment agency, housing authority, and certain nonprofit

---

Cal.3d 736, 743-746.)

[4]Our analysis herein of the language of section 933.5 does not address a grand jury's investigatory powers granted under other provisions of law.

corporations became subject to grand jury review (Stats. 1986, ch. 279, §§ 1, 2), the legislation was described in the report of the Senate Rules Committee dated June 19, 1986, as follows:

"Background

"According to the Assembly Third Reading analysis, the San Diego County Grand Jury discovered that it did not have the authority to investigate the county housing authority or SANCAL, a nonprofit corporation established by the county to administer its leasing program.

"Two `watchdog' groups called for a grand jury investigation of the San Diego Housing Commission.  The issue raised was the Housing Commission's acquisition of new offices through a questionable lease arrangement.  This prompted some inquiry into the overall administration of the Housing Commission.

"It was discovered, however, that the grand jury did not possess the authority to investigate such public agencies.  This bill was introduced to expand the authority of grand jury investigatory powers to include housing authorities and nonprofit corporations which are established by or operated for the benefit of the public.

"Digest:  This bill would expand the investigatory powers of grand juries to include specified public agencies.

"Analysis:   Under current law, grand juries are formed annually in each county to inquire into all public offenses committed or triable within the county and present them to the court for indictment; to investigate and report on county, city, and district operations, their officers, departments and their accounts and records; to investigate the prisons; misconduct of public officers, and the sale and transfer of public lands.

"At the end of each year, the grand jury is required to submit to the presiding judge of the superior court a final report of its findings and recommendations.

"This bill authorizes a grand jury to investigate the operations of a housing authority, joint powers agencies and any nonprofit corporation established by or operated on behalf of a public entity.

"Purpose of Bill

"The purpose of this measure is to ensure that grand juries, in their `watchdog' capacity, enjoy the statutory authorization to investigate the full range of local government agencies."

"Sloppy business practices" and "the operations" of a public agency are to be "carefully distinguished from substantive concerns" involving "the merit, wisdom, or expediency of . . . policy determinations

which may fall within the jurisdiction and discretion of a particular district."  (64 Ops.Cal.Atty.Gen., *supra*, 902.)

Accordingly, such policy matters as the selection of school sites or the purchase and improvement of school property (Ed. Code, § 39001 et seq.) would constitute substantive concerns falling exclusively within the discretion of the school board and hence would not be procedural matters subject to grand jury oversight.  The same may be said of school district "reorganizations," which could include such matters as the annexation of territory or the transfer of territory of the district to another district.  (Ed. Code, § 35501 et seq.)

Conversely, some of the operations of the school district which involve the question of *how* a school district performs its functions would fall within grand jury oversight.  For example, the manner in which a school district decides upon the district's "course of study" (Ed. Code, §§ 51053-51054) would be subject to scrutiny, whereas the substantive makeup of the "course of study" itself would not.  Likewise, the way the district determines the number of its officers, teachers, and other personnel and their selection could be investigated by the grand jury, but the actual selection of particular officers or other school personnel would not be subject to investigation.  Similarly, while a grand jury may not investigate why a school district has a particular policy regarding truancy, it may investigate the process, procedure, or manner of reaching such a decision in order to make "watch dog" recommendations to improve the district's operations.

In the area of business activities and a search for possible "sloppy business practices," grand jury oversight may encompass such matters as the controls used over personnel authorized to expend school district funds, clearly a procedural matter.  More mundane matters such as whether the district is maintaining adequate records of its business operations would of course be subject to investigation as would the financial controls used to prevent possible fraud or other illegal expenditures.  The grand jury could not, however, dictate to the school board what controls it must in fact use.

Another example of a possible "sloppy business practice" could arise where the school board itself orders its own supplies instead of utilizing the buying power of the state or the county if appreciable savings would accrue.  (Ed. Code, §§ 40000, 40002; Pub. Contract Code, §§ 12109, 20111).  This example also demonstrates the line to be drawn with respect to grand jury oversight.  Whether to use centralized or school district purchasing procedures is initially a matter of discretion with the school district board.  Once the procedure is selected and in place, it constitutes a procedural matter subject to grand jury oversight and comment.

We thus conclude in answer to the question presented that a grand jury may investigate and report upon the manner in which a school district performs its duties and functions.

* * * * *