[No. 38918.    En Banc.    October 6, 1966.]

PAUL W. DELANEY et al., *Petitioners*, v. THE SUPERIOR COURT
FOR KING COUNTY, *William J. Wilkins, Judge,*
*Respondent.*\*

*Lycette, Diamond & Sylvester,* by *Josef Diamond* and
*Simon Wampold,* for petitioners.

*Charles O. Carroll* and *William Kinzel,* for respondent.

PER CURIAM.—Petitioners Paul W. DeLaney, Raymond C.
Smith and Bernard J. Heavey, copartners in an architectural
and engineering firm, invite our original jurisdiction[1] on an
application designed as a "Petition and Motion to Expunge
and Suppress Report of Grand Jury From the Records of

---

\*Reported in 418 P.2d 747.

[1]For convenience in setting forth a chronology of events in this appeal,
we refer to the earlier case of DeLaney & Associates v. King County
Grand Jury, No. 38873 (King County No. 657471) remitted April 22,
1966. While there is a similarity of issues between the two cases, they
are, nonetheless, separate and distinct. Parties respondent in the first
case were individual grand jurors; in the instant appeal, parties respond-
ent are judges of the Superior Court for King County.

the Superior Court of the State of Washington for King County."

This motion, not appearing to come within the Supreme Court's "original jurisdiction in habeas corpus, and quo warranto and mandamus as to all state officers" as prescribed by Const. art 4, § 4, or falling within the Supreme Court's powers "to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction," will be denied and the petition dismissed.

The present proceeding appears to be the third of three separate applications concerning the grand jury report. April 14, 1966, petitioners, as plaintiffs, first filed a "Complaint and Petition for Injunction" in the Superior Court for King County, cause No. 657471, naming as individual defendants each member of a grand jury then convened and sitting in King County. Petitioners alleged therein that they had an agreement with King County to provide architectural and engineering services in the remodeling of the King County courthouse; that the superior court had charged the grand jury to investigate the construction project and if it found evidence of "bad business judgment, negligence, bungling, or the like, which does not amount to criminal activity, it will be within your province and discretion to file a report to that effect."

The complaint and petition further alleged that any such report would inevitably be based on incompetent evidence, misinformation or inadequate knowledge and asked that the grand jurors, individually and as a grand jury, be permanently enjoined from making or publishing any reports or comments concerning petitioners' "architectural and engineering contract or the remodeling project of the King County Courthouse." This complaint stated in paragraph 6 "That a grand jury may indict for a crime and that is all," and pleaded further that the grand jury is without power to make or file any reports whatever other than an indictment.

The record is silent as to what disposition was made of

that complaint. We find no answer thereto in the record or any motion or dismissal. As far as the record discloses, the "Complaint and Petition for Injunction" in King County cause No. 657471 is still pending.

April 14, 1966, the date of filing the forementioned action in superior court, the grand jury returned an indictment against petitioner Paul W. DeLaney, charging him with a gross misdemeanor. The same day, the grand jury delivered to and lodged with the presiding judge of the superior court a 17-page, legal-sized typewritten document entitled "Final Report of the Grand Jury," the very document in issue here. Whereupon, petitioners filed in the Supreme Court a petition and an amended petition to quash and suppress that report of the grand jury, naming each member of the grand jury as a respondent and pleading irreparable damage to petitioners' reputation and prejudice to petitioner DeLaney in defense of the indictment then pending against him.

Petitioners alleged that a grand jury is without authority to file a report; that petitioners had been afforded no chance to rebut or controvert any defamatory statements in such report; that petitioner DeLaney had a meritorious defense to the indictment. They alleged, too, that, although they did not know the contents of the report, it would do them irreparable damage for which they had no remedy other than a direct application to the Supreme Court.

We heard this petition to suppress the grand jury report en banc on April 19, 1966, and issued an en banc order that day reciting that "having been informed that the grand jury has heretofore issued an indictment against petitioner Paul W. DeLaney, which is now pending, and it appearing that the constitutional rights of due process of the petitioner Paul W. DeLaney may be in jeopardy by publication of the report at this time" ordered that publication of the report be restrained "until disposition in the Superior Court of the indictment pending against petitioner Paul W. DeLaney." We did not have before us at that time the report of the grand jury and could only assume from the history of the proceedings and the affidavits and argument of counsel that

publication of the report might well prejudice petitioner DeLaney in his right to a fair trial on the indictment. We think that our order makes clear that this was the premise upon which the order was based.

Following issuance of our order of injunction April 19, 1966, petitioner DeLaney appeared in superior court April 28, 1966, and moved to dismiss the indictment. After a hearing on this and other motions, the indictment then pending against him was dismissed on May 3, 1966.

The presiding judge, regarding the dismissal as a disposition of the indictment in accordance with our order of April 19th, thereupon directed that the report of the grand jury be filed and published. With the dismissal of the indictment and publication of the report, all issues raised by petitioners' first motion in the Supreme Court to suppress and expunge appear to have been finally resolved and determined. The order of April 19, 1966, constituting our remittitur to the superior court on transmission thereof by the Clerk of the Supreme Court to the superior court, would seem to have been a final disposition of that motion.

■ . Following publication of the grand jury report in open court May 3, 1966, petitioners next filed with the Supreme Court the instant petition, denominating it a "Petition and Motion to Expunge and Suppress Report of Grand Jury From the Records of the Superior Court of the State of Washington for King County," naming as party respondent thereto the presiding judge of the Superior Court for King County and intending thereby, we assume, that the petition run to all judges thereof. As we have indicated, petitioners brought the instant petition directly here, and we are satisfied from the record before us that no similar petition or motion following publication of the grand jury report was ever filed with or otherwise presented to the superior court for a ruling on the issues raised thereby.

It may well be that all of the grand jury report, or none of it, is subject to expungement; or parts and portions of it ought to be stricken and parts and portions thereof left undisturbed. We make no ruling upon it either way because

we see no reason at the present time to exercise original jurisdiction.

When petitioners brought their first petition here originally, we and they were uninformed as to the contents of the report. An indictment against petitioner DeLaney was then pending. It appeared that he had no other speedy and adequate remedy at law to prevent publication of the report other than by invoking our original jurisdiction. Concerning the instant petition, we have not been informed that there is pending against any of the petitioners any charges or proceedings on which they may be required to stand trial, and thus the most urgent basis for our original jurisdiction is wanting.

It is apparent that petitioners now have a plain, speedy and adequate remedy at law available to them. They are at liberty to file with and prosecute in the superior court any claims and pleadings they may deem suitable in the premises. Where such remedy is available in the superior court, the Supreme Court ought not consider the matter originally, but rather should leave the parties to a determination of the issues in the superior court, reserving, as contemplated by the constitution in such instances, revisory and appellate jurisdiction.

Relief is therefore denied, without prejudice to petitioners to initiate in the superior court such proper and available proceedings as they may deem appropriate.

HUNTER, J. (dissenting)—I dissent. I disagree with the majority that the motion of the petitioners to expunge and suppress the report of the recent King County grand jury is not properly before us. This motion involves the same basic question in regard to the grand jury that was contained in the original case (No. 38873), which has been consolidated with the present case (No. 38918), by order of the Chief Justice. We took original jurisdiction in mandamus in the first case and restrained the Superior Court for King County, in our order of April 19, 1966, from publishing the report of the grand jury until disposition of the indictment pending against petitioner Paul W. DeLaney. The indictment was dismissed and the superior court published the report. The

petitioners are again invoking the original jurisdiction of this court seeking, in effect, to direct the superior court to expunge and suppress the grand jury report from its records.

I fail to see the distinction in the exercise of our jurisdiction in these two cases. In the first case, we directed the superior court not to publish the report, and we are now being requested to direct the superior court to expunge and suppress the report that has been published. The relief sought in both instances is basically the same, and the grounds for relief remain unchanged—the petitioners' unqualified contention that the grand jury is without authority to issue a report.

It is argued that the motion to expunge and suppress should have been made first to the trial judge, and by the petitioners' failure to do so, the trial court was denied an opportunity to pass on the motion. An examination of the record shows that such an argument is an indulgence in technicalities.

Subsequent to dismissal of the indictment against Paul W. DeLaney, the petitioners requested the trial judge to refrain from publishing the report until disposition of their petition for rehearing and clarification of this court's order of April 19, 1966, which was set for hearing on the following day. The petitioners contended that it was not clear from the order whether the trial court was directed to publish the report after the disposition of the DeLaney indictment. They again asserted their contention that the grand jury was without authority to issue a report, and that it could not be published. The trial judge proceeded to publish the report, apparently acting under his interpretation of our order of April 19th. Under these circumstances, it would have been an utterly useless and repetitious act for the petitioners to have formally filed a motion requesting the superior court to expunge and suppress from the records the report that it had just published over the petitioners' objection. This court has often stated that a person is not required to perform a useless act. There was no place for the petitioners to go for relief except to this court; they had no other adequate remedy.

A showing of an emergent situation has been made. The petitioners will suffer a continuing disparagement to their professional reputation and consequent damage in the operation of their architectural business, by reason of the grand jury report, if it is not expunged. As we did in the first case (No. 38873, *supra*), we should now assume original jurisdiction as provided in Const. art. 4, § 4, and consider the petitioners' motion.

It is argued that the order of April 19, 1966 is final, and that the petition for rehearing thereon has been denied. This court is not bound by that order and it should consider the petitioners' petition for rehearing as having been granted. The main thrust of the order was to meet the emergent situation of preventing prejudice to Mr. DeLaney at his trial pursuant to the grand jury indictment. The ultimate issue of the right of a grand jury to issue a report was not adequately briefed and considered at the hearing held in the original proceeding (No. 38873, *supra*), which resulted in the April 19th order. This court, in the proper exercise of its judicial function, should not restrict itself from further consideration of the issue. If the grand jury has no authority to issue a report, then it follows that the petitioners' motion to expunge and suppress the report should be granted, with direction to the superior court to implement the order.

Going to the merits we start from the premise that the grand jury in this state is a creature of the legislature. It received its first life 112 years ago, during the first session of the territorial legislature in 1854, Laws of Wash. Terr., ch. 5. This act was amended by the territorial legislature in 1869, Laws of Wash. Terr., chs. 14 and 15; and again in 1873, Laws of Wash. Terr., chs. 14, 15, 16 and 17, codified in the Code of 1881, chs. 80, 81 and 82. In 1891, our state legislature adopted substantially the same statutes regarding the grand jury as were provided in the Code of 1881, and except for minor changes not material to this case these statutes have been and presently are the laws of this state. RCW chapter 10.28.

In this entire legislative history not once does the word

"report" appear. The reason for this omission is readily ascertained from an examination of the following statutes and the traditional language used in reference to grand juries. In this country the term "presentment" of a grand jury has included "report" of a grand jury. While there is some dispute among legal scholars concerning the correct definition of the term "presentment," general usage of the term in this country has been to use the term interchangeably with a "report." See 24 Am. Jur. *Grand Jury* § 36, p. 859; 44 Cornell L.Q. 257, 258 (1959); 12 U. Fla. L. Rev. 330-332 (1959); 52 Mich. L. Rev. 711, 714, 715 (1954); Edwards, The Grand Jury, at 157, 158 (1906).

By reason of the absence of the word "report" in our statutes, the only express authority for a report, if there be any, must come from the word "presentment."

An examination of our state and territorial statutes shows that the use of the word "presentment" first appeared in the oath of a grand jury, Laws of Wash. Terr., § 49, p. 110 (1854), as follows:

> The following oath shall be administered to the grand jury:
>
> You, as grand jurors for the body of the county of . . . . . . . . . . . . . . , (as the case may be) do solemnly swear (or affirm) that you will diligently enquire into, and true presentment make, of all such matters and things as shall come to your knowledge, according to your charge; the counsel of the United States of America, your own counsel, and that of your fellows, you shall keep secret; you shall present no person through envy, hatred or malice; neither will you leave any person unpresented through fear, favor, affection or reward, or the hope thereof; but that you will present things truly as they come to your knowledge, according to the best of your understanding, and according to the laws of this territory, so help you God.

This oath now appears in RCW 10.28.050, with some substitution of appropriate language, in lieu of the territorial statute. It is significant that in the territorial session of 1869, the following section was added:

> A *presentment* is made to the court, by the foreman, in the presence of the grand jury, and with the concurrence

of twelve of their number; but being a mere informal statement of facts, for the purpose of obtaining the advice of the court as to the law arising thereon, is not to be filed in court or preserved beyond the sitting of the grand jury. Laws of Wash. Terr., § 179, p. 239. (Italics mine.)

This section was re-enacted by the 1873 session of the territorial legislature and amended as follows by our state legislature in 1891, at the time of the enactment of the statutes relating to grand juries:

*A presentment is an informal statement of facts for the purpose of obtaining the advice of the court as to the law thereon.* It is made by the foreman in the presence of the grand jury and with the concurrence of twelve of their number. *A presentment is not to be filed in court or preserved beyond the sitting of the grand jury.* (Italics mine.) Laws of 1891, ch. 28, § 17, p. 49.

This section has remained unchanged since the time of its enactment and is presently the law of this state. RCW 10.28.085.

It appears clear that our territorial legislators were concerned over the use of a presentment by a grand jury. The legislators evidenced this concern by giving a special meaning to the term "presentment." They further safeguarded this meaning by the express limitation that it should *not* be *filed* in court or *preserved* beyond the sitting of the grand jury.

It follows that by reason of the absence of the word "report" in our statutes, and the definition and limitation of the word "presentment" therein, that there is no express authorization for a report by a grand jury in this state other than the use specifically defined and limited in RCW 10.28-.085, *supra*. We must then determine whether authorization for a report by a grand jury can be read into the statute by implication.

It is argued that to permit a grand jury to carry out its duties, authority to issue a report must be necessarily implied in order to give meaning to the statute. The only section of the chapter from which such an implication might be drawn is RCW 10.28.110:

*Inquisitional powers. The grand jury shall especially*

*inquire as to the offense of any person confined in prison on a criminal charge; into the condition and mismanagement of the public prisons in the county;* into the wilful misconduct in office of public officers, and shall in their discretion examine the public records of the county. (Italics mine.)

It appears clear that the purpose of the first two italicized inquiries is for the protection of the individual: (1) To prevent an individual from languishing in jail without being charged with a criminal offense, and to see that persons charged have been afforded a speedy trial. (2) To prevent treatment and submission to conditions that may constitute cruel and inhuman treatment or otherwise improper treatment to an individual during his confinement in a jail or prison. It appears that directing a grand jury to make such an inquiry for the above purposes would constitute a useless act unless the jury could make a report on the result of the inquiry. The statute therefore necessarily implies that a report from such inquiries by a grand jury can be made under our statutes.

It is further argued that the duty of inquiry into willful misconduct of public officers by grand juries and the discretionary examination of the public records of the county, as provided in the remainder of RCW 10.28.110, *supra,* would raise by implication the right of a grand jury to make a report thereon; that otherwise the performance of this function by a grand jury would be meaningless. This duty, in my opinion, involves the area of inquiry into bad faith and criminal misconduct of public officers, and whether as a result of such inquiry an indictment should issue. This is particularly true in view of RCW chapter 42.20, which provides that willful misconduct of a public officer constitutes at least a gross misdemeanor. Clearly, the consequence of an inquiry which may result in an indictment would not be a useless inquiry and could not raise, by implication, the authority for a grand jury to make a report on the basis that such inquiry would be a useless act if no report were made.

It is argued that a grand jury has the authority to make

reports since it has been the practice of grand juries to make reports in this state for more than 50 years. Such an argument is a non sequitur. As a creature of the legislature, the grand jury has no power to do other than that which is expressly authorized or may be necessarily implied from the statutes.

Cases have been cited by counsel from other jurisdictions discussing policy reasons pro and con as to why grand juries should or should not make a report. We do not find the restrictive use of a presentment in the statutes of these jurisdictions that appears in our statute. RCW 10.28.085, *supra*. The policy arguments for and against were resolved by the legislature in the adoption of our statutes, *supra*. We can only surmise what our territorial legislators and our early state legislators had in mind by limiting the use of a presentment and requiring its destruction after the grand jury session. However, it is probable that they were concerned about certain abuses that could result from reports made by an unbridled grand jury. They could have been concerned about the great injustice that could result to an individual examined in secret under sanction of a court, without counsel, without the opportunity to introduce evidence in his own behalf, denied the right of confrontation of witnesses and cross-examination, with the resulting publication of a disparaging report, and left with no forum in which to clear his name.

As early as 1906, George Edwards, in his book *The Grand Jury*, stated at pp. 157 and 158:

> When the grand jurors have completed all the duties which will devolve upon them, it is now customary for them to prepare a written report of their work, which is signed by their foreman and handed to the court crier with the indictments. In this report they frequently take occasion to discuss various matters affecting the public welfare, criticise public officials, act as censors of the morals of the community, and make recommendations which it is impracticable and impossible to carry into effect.
>
> That they are acting outside of their duties as grand jurors in making such presentments will hardly be doubted. As the official accuser for the government, their

duty is to present persons not things. That this practice should be continued upon the ground that it calls to the public eye abuses in the administration of government or the existence of vice in the community, is a proposition which rests upon no logical basis. If they have any evidence of the things which they thus set forth, it is their duty to the public and to themselves under their oath, to present the individuals guilty of such offences. If they have no personal knowledge of the facts, they are then proceeding in a manner contrary to law. If they know the things which they present, they should present individuals; if they do not know, they are committing a wrong in making broad accusations, which, while they cannot be sustained, grievously injure those to whom they indirectly apply.

This practice received severe condemnation over seventy years ago at the hands of Honorable Daniel Davis then Attorney General for the State of Massachusetts, who says: "The practice, not uncommon in some parts of the United States, of bringing forward, in the form of presentments, what are denominated public grievances, relative to the political or moral state of the country, is altogether extra-official, and may be and has been adopted and pursued for purposes foreign to, and inconsistent with, the nature of the institution; and perhaps it is not too much to assert, that the opportunity has been used and perverted to party purposes, and with an intention to produce an effect upon public measures and the public mind. Whenever this shall be the case it is to be considered in the same light as any other usurpation or abuse of the judicial authority. . . ."

In any event, on the basis of the interpretation I believe our statutes should be given, grand jury reports should not be permitted in this state except as impliedly authorized by our statutes.

This court should hold that in this state a grand jury is without authority to issue reports that may be filed or published, other than reports resulting from an inquiry as to the offense of any person confined in jail on a criminal charge, or from inquiries into the condition and mismanagement of the public prison or jail within the county.

This case should be remanded to the trial court for the expunging of the King County grand jury report from the

record of the King County Superior Court, insofar as is consistent with this opinion.

ROSELLINI, C. J. (concurring in the dissent)—The question of whether a grand jury has the right to issue a report is one of first impression in this state. It has been presumed that the grand jury had this authority. Thus, the grand jury, acting in good faith and in pursuance of their assumed authority, issued their report. I am now convinced that the grand jury is without the statutory authority to do this. I concur with the views expressed in the dissent.

I think it appropriate to take cognizance of the fact that the grand jury report made certain findings that Delaney's plan and performance of work had created safety hazards to the occupants of the courthouse. A team of impartial engineers was employed thereafter to inspect the work and ascertain if the findings of the grand jury report were correct; and they did not substantiate the findings of the grand jury. Also, the grand jury made a number of "findings" which were, in reality, conclusions of law which only a court is qualified to make.

The basic function of the grand jury is to ascertain if probable cause exists that a person has committed a crime; if so, to return an indictment. The truth of such an indictment, then, is tested in the adversary proceeding in the trial of the cause. Thus, all safeguards of due process are guaranteed to the accused. A report of a grand jury reflecting upon a person may do irreparable harm to that person's reputation. There is no forum in which such a person can have an opportunity to clear himself or to establish the falsity of the findings.

Thus, the evils spoken of by the writer of the book, *The Grand Jury*, quoted from in the dissent, are not imaginary. While the members of the grand jury undoubtedly acted in the utmost good faith, still their "findings" had to be based upon a one-sided presentation of the evidence without the advantages of an adversary proceeding. Also, it is not surprising that they were unable to distinguish between questions of law (upon which they were totally unequipped

to make decisions) and questions of fact (upon which they probably had only half the evidence).

The making of a report of this nature by a grand jury is not authorized by law and is not in accord with our basic concepts of due process and equal protection. I believe it is the clear duty of this court to recognize the evils inherent in such a procedure and to expunge the report from the record. Only in this way can the public be assured that the proper function of the grand jury will not be thus abused.