TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 18-103 |
|  | : |  |
| of | : | March 10, 2022 |
|  | : |  |
| ROB BONTA | : |  |
| Attorney General | : |  |
|  | : |  |
| CATHERINE BIDART | : |  |
| Deputy Attorney General | : |  |

The HONORABLE THOMAS C. ZELENY, INTERIM COUNTY COUNSEL, COUNTY OF NAPA, has requested an opinion on a question related to grand juries.

**QUESTION PRESENTED AND CONCLUSION**

Does the Penal Code section 919(b) requirement that a grand jury "inquire into the condition and management of the public prisons within the county" apply to local detention facilities such as jails?

Yes. Section 919(b)'s reference to "public prisons" includes local detention facilities.

**BACKGROUND**

The California Constitution and the Penal Code provide for at least one grand jury in each county.[1] The grand jury is a "judicial body" and "an instrumentality of the courts

_____

[1] Cal. Const., art. I, § 23; Pen. Code, § 905.

1

18-103

of this state."[2]  The Penal Code governs the formation and impaneling of a grand jury and sets forth its powers and duties.[3]  A county's grand jury is advised by its court, district attorney, and county counsel.[4]

The grand jury serves three basic functions:  (1) to determine whether probable cause exists on criminal charges to indict a defendant for trial,[5] (2) to determine alleged misconduct by local public officials and make a formal accusation to remove them from office,[6] and (3) to act as a "watchdog" on local government by conducting investigations and issuing reports.[7]  Although a regular grand jury performs all three functions, some grand juries perform only civil or criminal functions.[8]

The inquiry presented to us pertains to the grand jury's watchdog role, which "is by far the one most often played by the modern grand jury in California."[9]  Penal Code section 919(b) requires a grand jury, as one of its investigative tasks, to inspect the "public prisons" within a county.[10]  The grand jury community has debated the meaning

---

[2] *People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 438, citations omitted; see also Pen. Code, § 914.

[3] Pen. Code, §§ 888–939.91.

[4] Pen. Code, §§ 914, 934.

[5] Pen. Code, § 917; *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1467–1470; *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1170.

[6] Pen. Code, § 922; *McClatchy Newspapers v. Superior Court*, *supra*, 44 Cal.3d at p. 1170; see also Gov. Code, § 3060 et seq.

[7] *McClatchy Newspapers v. Superior Court*, *supra*, 44 Cal.3d at p. 1170, citing Pen. Code, §§ 919, 925 et seq.

[8] See *McGill v. Superior Court*, *supra*, 195 Cal.App.4th at p. 1468 (generally each county has one regular grand jury, and may add a separate criminal grand jury); 76 Ops.Cal.Atty.Gen. 181, 187 (1993) (new grand jury to be criminal and existing grand jury to become civil); Pen. Code, § 904.6, subd. (d) ("Whenever an additional grand jury is impaneled pursuant to this section, it may inquire into any matters which are subject to grand jury inquiry and shall have the sole and exclusive jurisdiction to return indictments, except for any matters which the regular grand jury is inquiring into at the time of its impanelment").

[9] *McClatchy Newspapers v. Superior Court*, *supra*, 44 Cal.3d at p. 1170.

[10] Pen. Code, § 919, subd. (b).

2

of "public prisons" in this context and, specifically, whether the term includes local detention facilities such as jails.[11]

Although there is no single generally applicable definition of "local detention facility," it is described similarly throughout the codes. For instance, Penal Code section 4027 provides a general definition of "local detention facility" as "any city, county, or regional facility used for the confinement of prisoners for more than 24 hours."[12] A city or county jail is a typical example of a "local detention facility."[13]

## ANALYSIS

Penal Code section 919(b) states that a grand jury "shall inquire into the condition and management of the public prisons within the county." We are asked to determine whether this reference to "public prisons" includes local detention facilities such as jails.

**Interpretative Principles**

Our fundamental goal in interpreting a statute is "to determine the Legislature's intent so as to effectuate the law's purpose."[14] To do so, we "look first to the words of

---

[11] See, e.g., Comments of the California Grand Jurors' Association on Professors Vitiello and Kelso's Tentative Recommendation Reform of California Grand Jury Statutes (2002) 35 Loyola L.A. L.Rev. 609, 618, fn. 18 (discussing "confusion among the counties as to what constitutes a 'public prison' as that term is used in California Penal Code sections 919 and 921"), 638–639; but see Civil Grand Jury, California Courts' website, http://www.courts.ca.gov/civilgrandjury.htm [as of March 8, 2022] (website maintained by Judicial Council, a policy- and rule-making arm of the courts, providing that grand jury is required to "[i]nquire into the condition and management of the detention facilities within the County").

[12] See also Pen. Code, §§ 4023.5 (similarly defining "local detention facility"), 4023.6 (same, but narrowed to female prisoners), 4028 (same), 6031.4 (providing an expanded but similar core definition); Cal. Code Regs., tit. 15, div. 1, § 1006 (defining "local detention facility" as "any city, county, city and county, or regional jail, camp, court holding facility, or other correctional facility, whether publicly or privately operated, used for confinement of adults or of both adults and minors").

[13] See generally Pen. Code, § 4000 (enumerating purposes, including detention and confinement, of county jail); see also Gov. Code, § 36903 ("Imprisonment for violation of an ordinance shall be in the city jail, unless by ordinance the legislative body prescribes imprisonment in the county jail").

[14] *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14, quoting *People v. Murphy* (2001) 25 Cal.4th 136, 142.

3

the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[15] We interpret words "in the sense in which they would have been understood at the time of the enactment."[16] We do not consider the words of statutes in isolation; instead, "we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes."[17]

If the plain text of a statute is ambiguous, or subject to more than one reasonable interpretation, "then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history."[18] The "historical circumstances of a law's enactment may also assist in ascertaining legislative intent, supplying context for otherwise ambiguous language."[19]

**Ordinary Meaning**

The Penal Code does not define either "prison" or "public prison," so we begin by looking to the ordinary meaning of these terms. In ordinary usage, the term "prison" can have either a generic or a specific meaning. For example, Merriam-Webster's Dictionary offers a generic definition of "prison" as "a place of confinement, esp[escially] for lawbreakers," as well as a more specific definition as "an institution (as one under state jurisdiction) for confinement of persons convicted of serious crimes."[20] Other dictionaries offer similar generic and specific definitions.[21]

To determine the meaning of "prison" in section 919(b), we look to the surrounding language, and see that the statute refers to "public prisons," as opposed to "state prisons." Notably, only one other California statute refers to "public prisons," and this reference also appears in the grand jury context: Penal Code section 921 entitles the grand jury to freely access "the public prisons."[22] The substance of section 921 reveals

---

[15] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.

[16] *People v. Cruz* (1996) 13 Cal.4th 764, 775.

[17] *Skidgel, supra*, 12 Cal.5th at 1, 14.

[18] *Ibid.*

[19] *Kaanaana v. Barrett Bus. Servs., Inc.* (2021) 11 Cal.5th 158, 169.

[20] Merriam-Webster's Collegiate Dict. (11th ed. 2020), p. 988.

[21] See, e.g., Black's Law Dict. (11th ed. 2019) p. 1446, col. 1; Oxford English Dict. (3d ed. 2007, updated through Sept. 2021) ["prison," definition 1b].

[22] Pen. Code, § 921.

little about the meaning of "public prisons."[23]  In stark contrast, several hundred statutes refer to "state prisons."  The Penal Code generally uses the term "state prisons" to refer to institutions for persons convicted of serious crimes and placed under the jurisdiction of the California Department of Corrections and Rehabilitation.[24]  And as a general rule, "where the Legislature uses different terms, different meanings are intended."[25]  Accordingly, the unique reference to "public prisons" with respect to the grand jury, instead of the otherwise ubiquitous "state prisons," suggests that "public prisons" has a different meaning.  To better understand this meaning, we turn to the use of the term "public prisons" at the time California enacted these grand jury provisions.

**Historical Meaning**

California enacted this grand jury provision in 1850[26] and it has existed continuously since.[27]  Though reenacted several times, the language has not changed.[28]  The words of the statute must therefore "be construed as continuations thereof, and not as

[23] *Ibid*.; see *People v. Coker* (2004) 120 Cal.App.4th 583, 589 (statutes dealing with same subject matter are ordinarily given same interpretation).

[24] See Pen. Code, §§ 18, subd. (a) (prescribing sentence for certain felonies to state prison), 2000 (establishing "State prison" for men), 5000 (establishing Department of Corrections and Rehabilitation, Division of Adult Operations), 5003 (providing that department with jurisdiction over enumerated state prisons and institutions), 6082 (for specified portion of Penal Code, "prisons" include facilities, camps, hospitals, and institutions, that confine, treat, employ, train, or discipline persons in legal custody of Department of Corrections and Rehabilitation); see also 49 Cal. Jur. 3d Penal, Etc., Institutions § 1 (2021) (discussing establishment of state prisons).

[25] *Kuhs v. Superior Court* (1988) 201 Cal.App.3d 966, 973.

[26] Stats. 1849–1850, ch. 119, p. 292 ("235. The Grand Jury must inquire . . . into the condition and management of the public prisons within the county").

[27] Each enactment has only technical differences, such as use of capitalization or subdivisions.  (See, e.g., Stats. 1959, ch. 501, § 2, p. 2448 [enacting current section 919(b)]; Stats. 1905, ch. 531, p. 694, § 3 ["923.  The grand jury must inquire . . . into the condition and management of the public prisons within the county . . . ."]); Stats. 1872, § 214 [same]; Stats. 1851, ch. 29 ["214.  The Grand Jury must inquire . . . into the condition and management of the public prisons within the County"]; see also 2 Cal. Law Revision Com., 1959 Annual Report, p. 20 [explaining that California Law Revision Commission's proposed 1959 reorganization of law on grand juries made no substantive changes], available at http://www.clrc.ca.gov/pub/Printed-Reports/Pub018.pdf [as of March 8, 2022].)

[28] See *ante* fn. 27.

new enactments."[29]  So the meaning of "public prisons" in the 1850 enactment is key to understanding the term's meaning in section 919(b) today.[30]

California's 1850 enactment mirrored language from a New York statute.[31]  That statute, since repealed, was understood to authorize grand jury inspections of county jails. New York state courts "over a long period of time" accepted grand jury reports on jail conditions.[32]  One case specifically refers to grand juries "investigating the condition and management of the public prisons of the County of Onondaga" pursuant to New York's grand jury statute.[33]  And more generally, New York cases and other sources occasionally refer to county jails as "county prisons."[34]

Similar statutes of other states have likewise been applied to jails.  For instance, according to Minnesota courts, the grand jury has "a duty to inspect the county jail and city lock-up."[35]  Court and Attorney General opinions from Indiana and Kentucky likewise construe their respective grand jury statutes to authorize inspection of county

---

[29] Pen. Code, § 5.

[30] See *ibid*.; *People v. Cruz*, *supra*, 13 Cal.4th at p. 775 ("The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment").

[31] See Deering's Ann. Pen. Code, § 919 (1998), p. 694; *Wood v. Hughes* (1961) 9 N.Y.2d 144, 151, 157–158 (1961).

[32] *Matter of May 1959 Grand Jury, Schenectady County* (N.Y.Sup.Ct. 1959) 22 Misc.2d 958, 959–960.

[33] *People v. Northrup* (N.Y.App.Div. 1963) 18 A.D.2d 240, 241.

[34] See, e.g., *People v. Johnson* (N.Y.Sup.Ct. 1992) 153 Misc.2d 537, 542; *County of Monroe v State of New York* (N.Y.Ct.Cl. 1985) 130 Misc.2d 261, 263; *People v. Casey* (1878) 72 N.Y. 393, 396; *People ex rel. Van Tassell v Columbia County* (1876) 67 N.Y. 330, 332; *People v. Bennett* (N.Y.Ch. 1833) 4 Paige Ch. 282.

[35] *Standke v. B. E. Darby & Sons, Inc.* (1971) 291 Minn. 468, 469, fn. 1, 478, fn. 3 (reciting statute, then quoting trial court memorandum).

6

jails.[36]  This uniformity favors a conclusion that California's 1850 enactment similarly used "public prisons" to include local detention facilities such as jails.  And while we have not found any California cases that address the application of our grand jury statute to jails, scholars report that California's early grand juries inquired into conditions of jails.[37]

In addition, some early California statutes referred to "prison" to mean "jail," supporting a similar interpretation of "public prisons."[38]  For example, a statute from the 1850s provided that the "county jail" was to "be kept by the sheriff and used as a *prison*" for the following purposes:

  1. For the detention of persons committed as witnesses in a criminal action;
  2. For the detention of persons committed for trial for a public offence;
  3. For the confinement of persons committed upon civil process; and

---

[36] See, e.g., *Reed v. State* (1926) 198 Ind. 338 (revealing that when similar Indiana statute was in place, related statute provided grand jury access to "*county* prison or prisons," italics added; 1980-1981 Ky.Op.Atty.Gen. 2-75 (Ky. OAG 80-97) (1980) ("Section 102 of the Old Criminal Code expressly provided that it is the duty of the grand jury to inquire, inter alia, into the conditions and management of the public prisons in the county. That code is no longer in effect. By custom in many counties the inspection role has extended to county buildings other than the county jail," internal quotation mark omitted); see also *Paul W. DeLaney & Associates v. Superior Court* (1966) 69 Wash.2d 519, 527–528, (dis. opn. of Hunter, J. on other grounds) (explaining the purpose of Washington's grand jury statute as being "[t]o prevent treatment and submission to conditions that may constitute cruel and inhuman treatment or otherwise improper treatment to an individual" while confined "in a jail or prison.").

[37] See A. Wells Petersen, The California Grand Jury System: A Review and Suggestions for Reform, 5 Pac. L.J. 1, 4 (1974) (stating that early grand juries investigated "local prisons," citing Sacramento County Record Group, County Grand Jury Reports of January 1851, August 1856, and April 1859); Olson, The California Grand Jury: An Analysis and Evaluation of Its Watchdog Function (1966), pp. 71, 74, 76.

[38] We note also that the 1849 Constitution of California referred to "public prison," but neither its substance nor cases nor other sources illuminate its meaning.  (See Cal. Const. of 1849, art. II, § 4 ["For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his . . . confine[ment] in any public prison"]; see, e.g., Browne, Report of the Debates in the Convention of California on the Formation of the State Constitution (1850), pp. 75, 308, 458 [discussion of provision but without illuminating meaning of "public prison"].)

7

4. For the confinement of persons sentenced to imprisonment therein, upon conviction for a public offence, or for examination, charged with having committed a public offence.[39]

These enumerated purposes are similar to those served by a jail today. The successor statute, Penal Code section 4000, no longer refers to "prison," but the original enumerated purposes generally remain the same.[40] We may therefore infer that this early use of the term "prison" was a generic use that included a jail.

Other early references to "prison" that evidently meant "jail" include an 1851 statute establishing the City of San Francisco and charging its city marshal with the duty "to superintend the city prison,"[41] and an 1872 statute putting the marshal of the City of San Jose in charge of the "city prison."[42] And until a state prison was established by early legislation, the county jail was deemed to be the state prison.[43] These early uses of "prison" to refer generically to "jail" buttress the view that "public prisons" in section 919(b) is similarly generic and includes jails.

In sum, while the modern use of "public prison" may be infrequent and ambiguous, the meaning at the time of enactment was clear: the term "public prison"

---

[39] 1 William H. R. Wood, *Digest of the Laws of California: Containing all Laws of a General Character which were in force on the first day of January, 1858* (1861) at p. 681, quoting Art. 3245, Sec. 17, italics added, punctuation amended.

[40] See Pen. Code, § 4000; see also Deering's Ann. Pen. Code § 1577 (1909 ed.), p. 718 (comprising similar statute but no longer providing county jail to be used as prison).

[41] 1851 Stat., ch. 84, p. 363; see also *id*. pp. 357 (referring to erection of prisons in City of San Francisco), 360–361 (conferring on city's common council legislative power "for the care and regulation of prisons").

[42] 1872 Stat., ch. 254, p. 345, § 35.

[43] 1 William H. R. Wood, *Digest of the Laws of California: Containing all Laws of a General Character which will be in force on the first day of January, 1858*, *supra*, at p. 353, quoting art. 2010, § 144 ("Until a state prison is provided the county jail of each county shall be deemed the state prison"). This was so even while governance of state prisons was simultaneously being addressed by legislation, and "prison ships" were used as state prisons. (See, e.g., Stats. 1851, ch. 114, § 1 et seq., p. 427.) Later, the Penal Code provided that "[t]he state prisons of this state shall be known as the state prison at San Quentin, which is situated in the county of Marin, . . . and the state prison at Folsom, which is situated in the county of Sacramento . . . ." (Deering's, Penal Code, § 1572 (1909) p. 703.)

8

included county jails. Because there is no indication that the Legislature ever intended to deviate from this meaning, it survives in section 919(b) today.[44]

**Purpose**

Construing "public prisons" in section 919(b) to include jails is also consistent with the context and purpose of the larger statutory framework.[45] The grand jury generally serves as a watchdog over local agencies.[46] "As long ago as 1880, the Legislature assigned to the grand jury the responsibility of making 'a careful and complete examination of the books, records and accounts of all officers of the county . . . and to report thereon.'"[47] This has since been recast to include among other things investigation and reporting "on the operations, accounts, and records of the officers, departments, or functions of the county."[48] And over the years, "the Legislature has continually expanded the boundaries of the grand jury's investigatory and reportorial domain."[49] For example, the grand jury may investigate and "report on the 'needs of all county officers' including the desirability of abolishing or creating county offices and the adequacy of the existing 'method or system of performing' county duties."[50] It may further investigate and report on "the operation of special-purpose assessing or taxing

---

[44] *Pasadena Redevelopment Agency v. Pooled Money Investment Bd.* (1982) 136 Cal.App.3d 290, 294 ("Absent a single meaning of the statute on its face, we must give it an interpretation based on the legislative intent with which it was passed").

[45] See *People v. Garcia* (2017) 2 Cal.5th 792, 805 ("We consider the text in conjunction with the context and purpose of the statute even where, as here, the statutory language has a 'highly technical' meaning").

[46] See Pen. Code, §§ 925, 925a; *People v. Superior Court (1973 Grand Jury)*, *supra*, 13 Cal.3d at p. 433 ("In California the grand jury . . . exercises an important 'watchdog' function over the operation of many facets of *local government*," italics added).

[47] *People v. Superior Court (1973 Grand Jury)*, *supra*, 13 Cal.3d at p. 436, italics omitted, citing Pen. Code Ann. 1880, ch. 109, p. 43, Pen. Code, § 925.

[48] Pen. Code, § 925.

[49] *People v. Superior Court (1973 Grand Jury)*, *supra*, 13 Cal.3d at p. 436. The boundaries referred to pertain to scope, not geography. (See *id*. at pp. 437–438 [stating that "although a grand jury has extensive authority to investigate and recommend improvements within its own county, it is not authorized to roam at will throughout the state or country reporting on what it might view as shortcomings in distant locales"].)

[50] *Id*. at p. 436, citing Stats. 1911, ch. 200, p. 373, § 1, Pen. Code, § 928.

districts located wholly or in part within the county."[51]  The grand jury may also investigate and report on the fiscal affairs of any incorporated city or joint powers authority within the county.[52]  Interpreting section 919(b) as including local jails is consistent with the statutory scheme of local oversight.[53]

**Prior Opinions**

Our prior opinions provide further support for this conclusion.  In 1979, we were asked whether Atascadero State Hospital was a "public prison" within the meaning of section 919(b).  In determining it was not, we relied on a broad definition of "prison," describing it as:

> a place maintained by a public authority for the detention of those confined under legal process to insure their appearance for further proceedings, or for the confinement of those convicted of criminal offenses and sentenced therefor.[54]

This generic definition of "prison" clearly encompasses a jail, and the Legislature is presumed to be aware of our opinion applying this definition to section 919(b).[55]

---

[51] *Id*. at p. 436, citing Stats. 1961, ch. 1461, p. 3313, § 2, Stats. 1969, ch. 931, p. 1870, § 1, Pen. Code, § 933.5.

[52] Pen. Code, § 925a; see also *People v. Superior Court (1973 Grand Jury)*, *supra*, 13 Cal.3d at p. 436.

[53] See *Zenith Ins. Co. v. Workers' Comp. Appeals Bd*. (2008) 159 Cal.App.4th 483, 491 ("Interpretation of the statutory language should be consistent and harmonized with the purpose of the statute and the statutory framework as a whole").

[54] 62 Ops.Cal.Atty.Gen. 268, 268 (1979), citing *People v. Upchurch* (1978) 76 Cal.App.3d 721, 723, 39 Cal.Jur.2d, Prisons and Prisoners, § 3, p. 638, Black's Law Dict. (4th ed. 1951) p. 1358, col. 1, 72 C.J.S., Prisons, §§ 1, 4, pp. 848–852.

[55] *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293, 1302 fn. 4 ("Opinions of the Attorney General, while not binding, are entitled to great weight. In the absence of controlling authority, these opinions are persuasive since the Legislature is presumed to be cognizant of that construction of the statute . . . and that if it were a misstatement of the legislative intent, some corrective measure would have been adopted," internal quotation marks and citations omitted); *People v. Union Oil Co.* (1968) 268 Cal.App.2d 566, 571 (stating that Attorney General's opinions are entitled to "great weight," and that lapse of time after opinion "supports the inference that if it were contrary to legislative intent, some corrective measure would have been adopted").

In another opinion, we applied the generic meaning of "prison" in the context of inspections of state prisons and jails, though not under section 919(b).[56] The issue was whether an investigative committee of the State Assembly had authority to inspect state prisons and jails.[57] After concluding that it did as to state prisons, we determined that the committee also had authority to inspect jails, based on a generic meaning of both "prison"[58] and "jail."[59] We even referred to a jail as a "public prison," stating that:

> A "jail" is a prison appertaining to a county or a municipality in which are confined for punishment persons convicted of misdemeanors committed in the county or municipality . . . and unless restricted by law, the prison of a county, city or town becomes the *public prison* of the state.[60]

The application of these generic definitions in evaluating the scope of authorized inspections of state prisons and jails by a legislative committee suggests it is also proper to apply a generic definition to the similar context of grand jury inspections of "public

---

[56] 14 Ops.Cal.Atty.Gen. 162, 162, 169 (1949). Entities other than grand juries are also required or authorized to inspect jails or state prisons. (See, e.g., Pen. Code, §§ 4300–4305 [authorizing county board of supervisors to appoint county advisory committee to annually inspect adult detention facilities as specified], 6031 [requiring Board of Corrections and Rehabilitation to inspect and report on "each local detention facility" every two years], 6031.1 [specifying subject matter of those inspections], 6126, subds. (f), (g) [charging Inspector General with inspection and oversight over specified matters at state prisons including medical care, staffing, and gang management].) These statutory inspections, unlike the grand jury's duty to "inquire into the condition and management of the public prisons," require inspection on highly specific matters; we see nothing in these statutes that illuminates the meaning of "public prisons" in section 919(b).

[57] 14 Ops.Cal.Atty.Gen., *supra*, at pp. 162–164 (discussing resolution creating and authorizing committee "to ascertain, study, and analyze all facts relating to custodial institutions for juvenile and adult persons in this State" except those expressly maintained for persons having a mental illness or disability).

[58] 14 Ops.Cal.Atty.Gen., *supra*, at p. 169 (stating that "the word 'prison' is a generic term comprising places maintained by public authority for the detention of those confined under legal process, whether criminal or civil, and whether the imprisonment is for the purpose of insuring the production of the prisoner to answer in future legal proceedings, or whether it is for the purpose of punishment for an offense of which the prisoner has been duly convicted and for which he has been duly sentenced").

[59] 14 Ops.Cal.Atty.Gen., *supra*, at p. 169.

[60] 14 Ops.Cal.Atty.Gen., *supra*, at p. 169, italics added, citations and internal quotation marks omitted.

11

prisons" under section 919(b). Thus, our prior opinions further support a determination that "public prisons" as used in section 919(b) should be construed broadly to include local detention facilities such as jails.[61]

**Other Considerations**

We acknowledge but ultimately disagree with a contrary view that is based on the text of Penal Code section 919. While section 919, subdivision (b) refers to "public prisons," the preceding subdivision expressly refers to "jails." One commenter suggests that if the Legislature had intended to include "jails" in subdivision (b), as well, the term would be repeated there. These two subdivisions read in full:

> (a) The grand jury may inquire into the case of every person imprisoned in the jail of the county on a criminal charge and not indicted.

> (b) The grand jury shall inquire into the condition and management of the public prisons within the county.[62]

We do not think the presence of "jails" in subdivision (a), along with the absence of "jails" from subdivision (b), connotes an intent to exclude them from subdivision (b). Instead, the plain text shows that each subdivision serves different purposes, with subdivision (a) focusing on particular persons and subdivision (b) focusing on institutions. Subdivision (a) is about cases involving a specific class of persons—those held in custody and awaiting indictment. It makes sense to use "jail" in this context because that is the where persons awaiting indictment are held.[63] But when the Legislature shifted its focus to institutions in subdivision (b), it used the broader term "public prisons," which is inclusive of jails but also includes other institutions.

---

[61] See also 88 Ops.Cal.Atty.Gen. 207, 209 (2005) ["A 'prison' is 'a place or condition of confinement or restraint' or 'a building or other place for the safe custody or confinement of criminals or others,'" quoting Webster's 3d New Internat. Dict. (2002) p. 1804], rejected on other grounds by *League of Women Voters of California v. McPherson* (2006) 145 Cal.App.4th 1469, 1475, 1480–1481. And consistent with this generic meaning, an early opinion by our office refers to "city prisons" to mean city jails. (3 Ops.Cal.Atty.Gen. 2, 2 (1944) [finding no statutory authority to confine persons sentenced to state prison in "city prison"].)

[62] Pen. Code, § 919, subds. (a) & (b).

[63] See *State v. Lint* (Iowa 1978) 270 N.W.2d 598, 600 (explaining intent of similar language is to protect the accused from languishing in jail without charge).

Finally, we do not believe that the 2011 "realignment" legislation that diverted some felony offenders to local jails is relevant to our analysis.[64] We received a comment expressing the view that "public prisons" had meant only "state prisons," but that jails are now included in the term because of realignment. We disagree with that reasoning. Putting lower-level felony offenders in a jail does not make it a state prison.[65] And while the distinctions between jails and state prisons may be more nuanced now, they remain under different jurisdictions (jails are local, while state prisons are under the Department of Corrections and Rehabilitation) and incarcerate different populations based on the seriousness of the crime (jails incarcerate misdemeanants and some felons sentenced to shorter-term sentences, while state prisons incarcerate felons sentenced to longer terms).[66] Rather than realignment, it is the historical and lasting meaning of "public prisons," as well as the statutory purpose and reasoning of our prior opinions, that persuade us that section 919(b)'s reference to "public prisons" includes "jails."

---

[64] See Pen. Code, § 1170, subd. (h); *People v. Avignone* (2017) 16 Cal.App.5th 1233, 1241 ["Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison," internal quotation mark omitted]; see, e.g., Stats. 2011, c. 39 (A.B.117), § 27 [comprising one set of realignment amendments to Penal Code section 1170].)

[65] See 67 Ops.Cal.Atty.Gen. 438, 442 (1984) ["Taking a boy *out* of the state prison and putting him in the school, with the 'benefits and immunities' of its other inmates, is certainly not turning the reform school into a state prison," quoting *Ex Parte Nichols* (1896) 110 Cal. 651].

[66] See *ante* fns. 13, 24.

13